Robert **GOLDSTEIN**

v.

**TOWN OF NANTUCKET et al.**

**Civ. A. No. 79–1455–Z.**

United States District Court,
D. Massachusetts.

Sept. 25, 1979.

John Reinstein, Mass. Civil Liberties Union Foundation, Boston, Mass., for Robert Goldstein.

Charles A. Goglia, Jr., King, Goglia, Kellogg & Gardner, Wellesley, Mass., for the Town of Nantucket.

### MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff is a professional musician who is known as the "Troubadour of Nantucket". He brought this action for declaratory and injunctive relief, alleging that enforcement by the Town of Nantucket of its Transient Vendor Bylaw deprives him of rights secured by the First Amendment. The bylaw, as applied to plaintiff, is constitutionally deficient.

The relevant facts are not in dispute. Plaintiff has for many years studied and performed the traditional music of Nantucket and is an acknowledged authority on the music and folklore of the island. He plays a number of instruments from the hammer dulcimer to the fife and banjo and he sings. He has performed the music of Nantucket at numerous festivals and in concert but prefers to perform in the tradition of balladeers, on the street. When he performs in Nantucket, he customarily plays the hammer dulcimer and sings, and positions his open dulcimer case so that passersby may contribute donations, and some do. On a number of occasions during the past four years plaintiff attempted to play his music in the streets of Nantucket but was prevented by town officials from doing so. In 1975, he applied to the town for permission to perform, and his petition was denied. In 1978 he again applied and was granted a "conditional permit" for a period of two weeks. The permit specified locations and times at which plaintiff could perform. At the end of the two-week period the Police Chief reported to the Board of

Selectmen that there had been "no problems". The Board then advised plaintiff that the new Transient Vendor Bylaw did apply to him and that he would have to obtain a permit before he would "be allowed to proceed further with the playing of . . . [his] . . . music." The bylaw defines "Transient Vendors" to include "any person who engages in a transient or temporary business . . . selling . . . offering for sale or accepting contributions for the offering . . . or providing . . . entertainment." It sets forth the standards for deciding whether a permit may issue. Plaintiff attacks these standards and argues that in light of the First Amendment they include impermissible criteria for regulation of free expression.

By its terms, the First Amendment forbids infringement of the right of free "speech." The Constitutional protection of free speech,[1] moreover, applies broadly to various forms of expression, literary, artistic, political, and scientific. *Miller v. California*, 413 U.S. 15, 22–3, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), *rehearing denied* 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973). See also, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 557–8, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) (the musical "Hair"), *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) (the motion picture "The Miracle"). The substance and not merely a method of expression is protected by the First Amendment:

> [While] Each medium of expression, of course, must be assessed for First Amendment purposes by standards suited to it, . . . 'the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary. Those principles, as they have frequently been enunciated by this Court, make freedom of expression the rule.' *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 557–8, 95 S.Ct. at 1246,

quoting *Joseph Burstyn, Inc. v. Wilson, supra,* 343 U.S. at 503, 72 S.Ct. 777. Accordingly, plaintiff's public performance of Nantucket's traditional folk music is clearly within the scope of protected First Amendment expression.

The Constitutional guarantee, however, does not confer absolute protection from government regulation of public expression. States may impose reasonable and impartial regulations upon the time, place and manner of public expression. *Schneider v. State of New Jersey*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). But "streets, sidewalks, parks, and other similar public places are . . . historically associated with the exercise of First Amendment rights . . ." *Amal. Food Emp. U. Loc. 590 v. Logan Val. Plaza*, 391 U.S. 308, 315, 88 S.Ct. 1601, 1607, 20 L.Ed.2d 603 (1968), and "[the Supreme Court] ha[s] consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 153, 89 S.Ct. 935, 940, 22 L.Ed.2d 162 (1969) (citations omitted). In *Shuttlesworth v. City of Birmingham*, the court recalled thirty years of prior First Amendment decisions and concluded "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Id.,* 394 U.S. at 150–1, 89 S.Ct. at 938. (citations omitted)

Nantucket's bylaw subjects entertainers, including plaintiff, to the same licensing requirements as apply to transient merchants and vendors. A permit may not issue without a finding by the Board of Selectmen that issuance "would be beneficial to the best interests of the Town of Nantucket and its inhabitants." In making its determination, the Board of Selectmen are, by the terms of the bylaw, required to

---

**1.** First Amendment protection applies to state action as well as Congressional action. See *Schneider v. State of New Jersey*, 308 U.S. 147, 150, 60 S.Ct. 146, 84 L.Ed. 155 (1939). See especially *id.,* at 150, n. 8, 60 S.Ct. 146.

consider the "financial responsibility" of the entertainer, the "effect of the [entertainment] on the neighborhood properties", and the interests of public order and safety. As a matter of practice, they also take into consideration the wishes of the merchants in the shopping area. Because three of the licensing criteria—financial responsibility of the applicant, effect on neighboring properties, and the opinion of town merchants—are neither narrow, objective nor definite standards, and because those criteria exceed in their scope constitutionally permissible grounds for regulating free expression, the bylaw does not pass constitutional muster. As applied to plaintiff, whose contemplated activity enjoys First Amendment protection, it is unconstitutional.

Defendant contends, however, that plaintiff's activity is commercial speech and thus does not enjoy First Amendment protection. It further argues that even if the performance is protected activity, the enforcement of the bylaw conforms with the guaranteed right of free expression and permits only impartial restriction of the time, place and manner of plaintiff's activity. Neither of these contentions is availing.

■ The United States Supreme Court recently observed that "the notion of unprotected 'commercial speech' [has] all but passed from the scene." *Va. St. Bd. of Pharm. v. Va. Cit. Cons. Council*, 425 U.S. 748, 759, 96 S.Ct. 1817, 1824, 48 L.Ed.2d 346 (1976), citing *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). Indeed, "[s]peech . . . is protected even though it is carried in a form that is 'sold' for profit (citations omitted), and even though it may involve a solicitation to purchase or otherwise pay or contribute money." (citations omitted) *Va. St. Bd. of Pharm. v. Va. Cit. Cons. Council, supra,* 425 U.S. at 761, 96 S.Ct. at 1825. See also *Bates v. State Bar of Arizona*, 433 U.S. 350, 363, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). The fact that plaintiff accepts contributions of passersby during his public performances, thus, does not dilute plaintiff's protection of the First Amendment. It plainly does not broaden defendant's limited mandate to exercise impartial regulations upon the use of the sidewalks for public expression.

Defendant's second argument is contradicted by the very terms of the bylaw which chart a course of Town inquiry that ranges far beyond the narrow parameters set by the First Amendment. Neither the language of the bylaw nor defendant's testimony suggests that any authoritative construction so narrows the bylaw as to comply with the command of the First Amendment. *Cf. Cox v. State of New Hampshire*, 312 U.S. 569, 576, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). See also *Shuttlesworth v. City of Birmingham, supra,* 394 U.S. 147, 153, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

The bylaw directs the selectmen to consider, among other factors, the "financial responsibility" of the applicant and the effect of the proposed expression "on the neighborhood properties." The existence of such broad evaluative criteria in addition to specific criteria for the protection of public safety belies defendant's claim that determination of what is "beneficial to the best interests of the Town . . ." contemplates only the interest of public safety. Indeed, the Chairman of the Board of Selectmen testified that one primary consideration in weighing applications is the opinion of neighboring merchants, and on the face of plaintiff's 1978 application to the town there appears a handwritten notation that one of the selectmen is "investigating with merchants."

The requirement of merchants' approval is irreconcilable with freedom of expression. It is unqualified censorship and it is just what the First Amendment forbids. The prayers for declaratory and injunctive relief are granted. Pursuant to authority granted by 28 U.S.C. § 2201, the Court determines and declares that the Transient Vendor Bylaw (Effective August 24, 1978) of the Town of Nantucket, Massachusetts is unconstitutional as applied to plaintiff.

Plaintiff shall prepare and submit to defendant for approval as to form a judgment in accordance with this opinion.