[No. 56959–2.   En Banc.   December 6, 1990.]

THE CITY OF SEATTLE, *Petitioner,* v. ARLANDER
D. WEBSTER, *Respondent.*

*Mark H. Sidran, City Attorney, Douglas B. Whalley, City Prosecutor,* and *Jeanne Innis, Assistant,* for petitioner.

*Kenneth Friedman* of *Seattle–King County Public Defender Association,* for respondent.

*J. Mark Weiss* on behalf of the American Civil Liberties Union, amicus curiae for respondent.

SMITH, J.—The City of Seattle sought review of a King County Superior Court decision affirming the Seattle Municipal Court which dismissed charges against Respondent Arlander Duke Webster for violation of the Seattle Pedestrian Interference Ordinance, Seattle Municipal Code 12A.12.015(B)(1). Both courts concluded that the section of the ordinance under which respondent was charged was unconstitutionally vague and overbroad. We disagree and remand the case to the Seattle Municipal Court for trial.

The principal question we consider in this case is whether subsection (B)(1) of Seattle Municipal Code (SMC) 12A.12.015 (pedestrian interference ordinance) is unconstitutional on its face because it is vague and overbroad. We also consider whether the ordinance is unreasonable and whether it violates equal protection of the law. We answer those questions in the negative and uphold the constitutionality of the ordinance.

We reverse the Superior Court and the Municipal Court and reinstate the charge against Respondent Webster. The case should then proceed to trial in the ordinary course. Essential facts will then become of record. Respondent Webster will not be precluded from again raising the issue of constitutionality of the ordinance at a proper stage of the proceedings.[1]

Respondent Arlander Duke Webster was charged with violating SMC 12A.12.015(B)(1), a portion of the Seattle "pedestrian interference ordinance," on April 10, 1988. The ordinance makes it unlawful to intentionally obstruct pedestrian or vehicular traffic.

When the case was called, Respondent Webster moved for dismissal, challenging the ordinance as unconstitutionally vague, overbroad, and unreasonable and as a violation of his equal protection rights.

---

[1] *See, e.g., State v. Worrell,* 111 Wn.2d 537, 761 P.2d 56 (1988).

On May 27, 1988, the Honorable Barbara A. Madsen, Seattle Municipal Court, granted respondent's motion for dismissal, stating:

[A] person could be charged with this, under this ordinance, and be doing something that no one in the world would think was unlawful conduct, including on a very nice hot sunny day being age sixteen sitting on a sidewalk watching cars go by, which of course I think that all of us have done; being a Santa Claus at Christmas time and standing ringing a bell at a front door of a department store; walking from the side of the store out to the street to see if your bus has come yet and making people walk around you. I just could imagine many, many, many, many circumstances under which it would be based on the discretion of police authority as to whether you should be charged or not based on conduct, that if you were an attractive looking person who probably was a person of some means [you] wouldn't be arrested, and if you were a scrubby looking individual looking like you didn't have the where with all [*sic*] for the next cup of coffee, you would be charged, or [*sic*] I find that unconstitutional and I would grant the defendant's motion to dismiss based on the lack of constitutionality of the ordinance.

The City of Seattle appealed the dismissal to the Superior Court.

On November 17, 1988, the Honorable R. Joseph Wesley, King County Superior Court, affirmed the dismissal, concluding that "[t]he ordinance, SMC 12A.12.015(B)(1), is unconstitutionally vague and overbroad."

On December 7, 1988, the City of Seattle filed a notice for discretionary review. By order dated March 6, 1990, the Court of Appeals, Division One, certified the case to this court. This court accepted certification on March 9, 1990.

Because the case was dismissed before trial upon a facial challenge to the constitutionality of the ordinance, there is no factual record. The police report on the underlying charge, which is the only source of information relating to the charge, is reproduced in its entirety:

SEATTLE POLICE DEPARTMENT
# NCIDENT REPORT

☒ INCIDENT AND ARREST
☐ ARREST ONLY

89-157022

☐ DO NOT DISCLOSE  ☒ NOT DISCLOSED  ☐ DISCLOSE

I HEREBY DECLARE THE FACTS HEREIN REPORTED BY ME ARE TRUE AND CORRECT, I UNDERSTAND THAT BY FILING A FALSE REPORT I MAY BE SUBJECT TO CRIMINAL PROSECUTION

☐ HAZARD TO OFFICER
☐ DOMESTIC VIOLENCE

| INCIDENT CLASSIFICATION | TOOL/WEAPON USED | METHOD OF TOOL/WEAPON USE |
|---|---|---|
| PEDESTRIAN INTERFERENCE | | |

| LOCATION | FIRM NAME | CENSUS | BEAT |
|---|---|---|---|
| NE 45 / UNIVERSITY WAY NE (NW CORNER) | | 53.01 | U-5 |

| TYPE OF PREMISE (FOR VEHICLES STATE TYPE AND WHERE PARKED) | POINT OF ENTRY |
|---|---|
| CITY SIDEWALK | |

| DATE/TIME REPORTED | DAY OF WEEK | DATE/TIME OCCURRED | DAY OF WEEK |
|---|---|---|---|
| 4-10-88  2310 HRS | SUN | 4-10-88  2310 HRS | SUN |

☐ EVIDENCE SUBMITTED  ☐ FINGERPRINT SEARCH MADE  ☐ FINGERPRINTS FOUND  ☐ LAB EXAM REQUESTED

DO NOT DISCLOSE

CODE   C (PERSON REPORTING, COMPLAINANT)   V (VICTIM)   W (WITNESS)   INJURED   HAS USABLE TESTIMONY

PERSONS/VEHICLES INVOLVED

| CODE | NAME (LAST, FIRST, MIDDLE) | | RACE/SEX/D.O.B. (OPTIONAL) | HOME PHONE | HOURS |
|---|---|---|---|---|---|
| C | SPD. ON VIEW | | | | |
| ADDRESS | | ZIP CODE | OCCUPATION (OPTIONAL) | WORK PHONE | HOURS |
| | | | | | |
| CODE | NAME (LAST, FIRST, MIDDLE) | | RACE/SEX/D.O.B. (OPTIONAL) | HOME PHONE | HOURS |
| | | | | | |
| ADDRESS | | ZIP CODE | OCCUPATION (OPTIONAL) | WORK PHONE | HOURS |

SUSPECT NUMBER

| NAME (LAST, FIRST, MIDDLE) | RACE/SEX/D.O.B. | HEIGHT | WEIGHT | HAIR | EYES | SKIN TONE | BUILD |
|---|---|---|---|---|---|---|---|
| WEBSTER, ARLANDER DUKE | B/m 1-14-55 | 6'4 | 250 | BLK | BRN | DK | LARGE |

| ADDRESS | HOME PHONE | WORK PHONE | WORK HOURS | OCCUPATION | EMPLOYER/SCHOOL |
|---|---|---|---|---|---|
| TRANSIENT | | | | | |

CLOTHING, SCARS, MARKS, TATTOOS, PECULIARITIES, A.K.A.    RELATIONSHIP TO VICTIM

BA/CIT. NO.   CHARGE DETAILS (INCLUDE ORDINANCE OR R.C.W. NUMBER AND CHARGE NARRATIVES)
12A.12.015 (B)(1): PEDESTRIAN INTERFERENCE

☒ BOOKED ☐ Y.S.C.  ☒ K.C.J. #2  ☐ CITED  ☐ K.C.J. #1  ☐ K.C.J. #3

☐ ADDITIONAL PROPERTY (PROPERTY FORM 5.37.1 MUST BE ATTACHED)   ☐ NOTHING TAKEN   ☐ UNKNOWN AT TIME OF REPORT   ☐ VICTIM FOLLOW-UP LEFT

PROPERTY

| ARTICLE TYPE | BRAND NAME | VALUE |
|---|---|---|
| ☐ STOLEN  ☐ RECOVERED   SERIAL NUMBER | OWNER APPLIED NUMBER | MODEL NUMBER |

COLOR, SIZE, DESCRIPTION, CALIBER, BARREL LENGTH, ETC.

1. ADDITIONAL PERSONS - CODE NAME, RACE, SEX, D.O.B., ADDRESS, INJURY HOSPITALIZATION, HOME AND WORK PHONES, HOURS, AND IF DISCLOSURE OF NAME IS PERMITTED
2. ADDITIONAL SUSPECTS - DETAIL INFORMATION IN SAME ORDER AS SUSPECT BLOCK.
3. VICTIM'S INJURIES - DETAILS AND WHERE MEDICAL EXAM OCCURRED.
4. PROPERTY DAMAGED - DESCRIBE AND INDICATE AMOUNT OF LOSS
5. PHYSICAL EVIDENCE - DETAIL WHAT AND WHERE FOUND BY WHOM, AND DISPOSITION.
6. VEHICLE USED BY SUSPECT AND DISPOSITION
7. NAME, ADDRESS PHONE NUMBER OF JUVENILE'S PARENT(S)/GUARDIAN(S). NOTE IF CONTACTED AND IF INCIDENT ADJUSTED.
8. LIST STATEMENTS TAKEN AND DISPOSITION
9. RECONSTRUCT INCIDENT AND DESCRIBE INVESTIGATION
10. OUTLINE TESTIMONY OF PERSONS MARKED "HAS USABLE TESTIMONY" ON FRONT

| ITEM NO. | |
|---|---|
| 9 | SUSPECT WAS ON-VIEWED BY R/O's STOPPING CITIZENS ON THE SIDEWALK BLOCKING THEIR PATH, STICKING HIS HAND OUT AND ASKING "SPARE CHANGE?" OTHER CITIZENS WERE OBSTRUCTED BY THE SUSPECT AND HAD TO WALK AROUND SUSPECT TO AVOID HIM. SUSPECT ARRESTED FOR PEDESTRIAN INTERFERENCE AND BOOKED INTO K.C. JAIL. SUSPECT'S PROPERTY PUT INTO 6TH FLOOR PROPERTY ROOM FOR S.K.O. SCREENED BY A/SGT. SKAAR. |

| PRIMARY OFFICER (L-3) | SERIAL | UNIT | SECONDARY OFFICER (L-3) | SERIAL | UNIT | APPROVING OFFICER | SERIAL |
|---|---|---|---|---|---|---|---|
| G. SHIL: PETAR | S183 | 423 | L.T. FAURIA | S145 | 423 | S. TREE 22VY | |

DISTRIBUTION PRECINCT ( )
21 813 FORM 5.37 REV 10/82

☒ CRIMES AGAINST PERSONS   ☒ ADV
☐ CRIMES AGAINST PROPERTY   ☐ VICE/NARC

☒ COURT UNIT
☐ CRIME ANALYSIS

☐ K-9 UNIT
☐ OTHER  CMC

PAGE 1 OF 1

The Seattle "pedestrian interference ordinance," SMC 12A.12.015, adopted in October 1987, provides in relevant part:

A. The following definitions apply in this section:
1. "Aggressively beg" means to beg with intent to intimidate another person into giving money or goods.

. . . .

3. "Obstruct pedestrian or vehicular traffic" means to walk, stand, sit, lie, or place an object in such a manner as to block passage by another person or a vehicle, or to require another person or a driver of a vehicle to take evasive action to avoid physical contact. Acts authorized as an exercise of one's constitutional right to picket or to legally protest . . . shall not constitute obstruction of pedestrian or vehicular traffic.

. . . .

B. A person is guilty of pedestrian interference if . . . [that person] intentionally:
1. Obstructs pedestrian or vehicular traffic; or
2. Aggressively begs.
C. Pedestrian interference may be punished by a fine not to exceed Five Hundred Dollars ($500.00) or by imprisonment in jail for a term not to exceed ninety (90) days or by both such fine and imprisonment.

■ Facts are not essential for consideration of a facial challenge to a statute or ordinance on First Amendment grounds.[2] Constitutional analysis is made upon the language of the ordinance or statute itself.[3]

We first consider whether SMC 12A.12.015(B)(1) is unconstitutionally overbroad.

■ This court summarized the overbreadth doctrine in *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989) as follows:

---

[2]*Cf. Maynard v. Cartwright*, 486 U.S. 356, 361, 100 L. Ed. 2d 372, 108 S. Ct. 1853 (1988) (vagueness challenges to enactments not involving First Amendment rights are to be evaluated in light of particular facts of each case); *State v. Worrell*, 111 Wn.2d 537, 761 P.2d 56 (1988) (when a challenge is made to the constitutionality of an ordinance or statute not alleged to affect First Amendment freedoms, facts are required for evaluation "as applied" to a particular defendant's circumstances).

[3]*See Seattle v. Huff*, 111 Wn.2d 923, 928, 767 P.2d 572 (1989).

A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. The First Amendment overbreadth doctrine may invalidate a law on its face only if the law is "substantially overbroad." In determining overbreadth, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." Criminal statutes require particular scrutiny and may be facially invalid if they "make unlawful a substantial amount of constitutionally protected conduct . . . even if they also have legitimate application."[4]

A statute which regulates behavior, and not pure speech, "will not be overturned unless the overbreadth is 'both real and substantial in relation to the ordinance's plainly legitimate sweep.'"[5] However, despite the obligation to construe the language of an ordinance to uphold its constitutionality, this court will not do so if it is "unable to place a sufficiently limited construction upon the standardless sweep of [the] legislation."[6]

▮ Respondent argues that "[t]he Seattle ordinance has a potentially enormous scope, since it is not uncommon to innocently walk, stand, sit, lie, or place an object in such a manner as to block passage of another." However, the ordinance is written to apply only to persons intentionally "block[ing] passage by another person or a vehicle" and "requir[ing] another person or a driver of a vehicle to take evasive action to avoid physical contact" *by* "walk[ing], stand[ing], sit[ting], l[ying] or plac[ing] an object". SMC 12A.12.015(A)(3).

The ordinance does not prohibit innocent intentional acts which merely *consequentially* block traffic or cause

---

[4](Citations omitted.) *Seattle v. Huff,* 111 Wn.2d 923, 925, 767 P.2d 572 (1989) (upholding Seattle's telephone harassment ordinance, SMC 12A.06.100(a)(3)).

[5]*Seattle v. Eze,* 111 Wn.2d 22, 31, 759 P.2d 366 (1988) (disorderly conduct on a bus) (quoting *O'Day v. King Cy.,* 109 Wn.2d 796, 804, 749 P.2d 142 (1988)); *see Broadrick v. Oklahoma,* 413 U.S. 601, 615, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973).

[6]*Bellevue v. Miller,* 85 Wn.2d 539, 547, 536 P.2d 603 (1975).

others to take evasive action. Many of those "consequential" results may arise from protected activities such as collecting signatures on a petition. In addition, "mere sauntering or loitering on a public way is lawful and the right of any man, woman, or child."[7] Under SMC 12A.12-.015(B)(1), it is not unlawful to exercise that right even though it may cause another person or driver to "take evasive action".

The City of Seattle argues that inclusion in the ordinance of the element of specific intent saves it from being unconstitutionally overbroad. We agree. In *Seattle v. Slack,*[8] we held that the element of specific intent saved another Seattle Municipal Ordinance from unconstitutional overbreadth.

In *Slack,* this court considered the constitutionality of SMC 12A.10.010, Seattle's "prostitution loitering ordinance." The court was unanimous in upholding the ordinance which clearly required specific intent for specified acts.

In this case, the language of SMC 12A.12.015(B)(1) clearly indicates that, before there can be a charge or conviction under the ordinance, a person must act with *intent* to block another's passage or with *intent* to cause a person or vehicle to take evasive action. The element of intent in the ordinance sufficiently narrows its scope to save SMC 12A.12.015(B)(1) against a claim of unconstitutional overbreadth.

We next consider whether SMC 12A.12.015(B)(1) is unconstitutionally vague.

The due process doctrine of "void for vagueness" has two central principles. First, criminality must be defined with sufficient specificity to put citizens on notice concerning conduct they must avoid. And second, legislated

---

[7]*Seattle v. Pullman,* 82 Wn.2d 794, 800, 514 P.2d 1059 (1973) (quoting *Commonwealth v. Carpenter,* 325 Mass. 519, 521, 91 N.E.2d 666 (1950)).

[8]113 Wn.2d 850, 784 P.2d 494 (1989).

crimes must not be susceptible of arbitrary and discriminatory law enforcement.[9]

A statute is unconstitutionally vague if "persons of common intelligence must necessarily guess at its meaning and differ as to its application."[10]

In *Seattle v. Huff*,[11] this court summarized the "void for vagueness" doctrine:

> Under this analysis, the factual setting of this case is irrelevant and we look only to whether "'. . . any conviction under the statute could be constitutionally upheld.'" An ordinance is presumed constitutional and the party challenging the constitutionality of the law has the burden of proving it is unconstitutionally vague beyond a reasonable doubt. This presumption "should be overcome only in exceptional cases."
>
> When a legislative enactment is challenged on vagueness grounds, the issue is whether the two requirements of procedural due process are met: adequate notice to citizens and adequate standards to prevent arbitrary enforcement. Strict specificity is not required; the exact point where actions cross the line into prohibited conduct need not be predicted. "'[I]f [persons] of ordinary intelligence can understand a penal statute *notwithstanding some possible areas of disagreement,* it is not wanting in certainty.'" A statute is not unconstitutional "if the general area of conduct against which it is directed is made plain." The language of a challenged statute will not be looked at in a vacuum, rather, the context of the entire statute is considered.[12]

The limitations on the vagueness doctrine reflect this court's deference to the constitutional legislative role, as

---

[9]*State v. Smith,* 111 Wn.2d 1, 4–5, 759 P.2d 372 (1988) (upholding RCW 9A.46.010, the "harassment" statute).

[10]*State v. Smith,* 111 Wn.2d 1, 7, 759 P.2d 372 (1988) (quoting *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982)); *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 709 L. Ed. 322, 46 S. Ct. 126 (1926).

[11]111 Wn.2d 923, 767 P.2d 572 (1989) (upholding Seattle's telephone harassment ordinance, SMC 12A.06.100(a)(3)).

[12](Citations omitted.) *Seattle v. Huff,* 111 Wn.2d 923, 928–29, 767 P.2d 572 (1989).

well as its recognition of the difficulties associated with legislating in areas such as disorderly conduct, where the terms are difficult to define.[13]

■ Petitioner City of Seattle contends that the ordinance is not unconstitutionally vague inasmuch as it includes an element of specific intent.[14] The requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid.[15]

SMC 12A.12.015(B)(1) includes an element of specific intent. The ordinance does not, as respondent and *amicus* claim, base criminality on the reaction of others to the presence of a person on the public sidewalks. Rather, it defines the proscribed conduct solely in reference to the person interfering with the flow of pedestrian or vehicular traffic. The question can be asked: Did that person stand, sit, walk, or place an object *with the intent* to cause another person or a driver of a vehicle to take evasive action?[16] If the answer is "yes," then the person may be properly charged under the ordinance.

SMC 12A.12.015(B)(1) provides adequate notice to persons of common understanding concerning the behavior prohibited and the specific intent required. It provides citizens, police officers and courts alike with sufficient guidelines to prevent arbitrary enforcement. It is not unconstitutionally vague.

---

[13]*Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988) (upholding SMC 12A.12.040(F), disorderly conduct on a bus).

[14]SMC 12A.04.030 defines intent as follows:

"A person intends or acts intentionally or with intent to accomplish a result or to engage in conduct described by the section defining the offense, [*sic*] when [that person's] conscious objective or purpose is to accomplish such a result or to engage in conduct of that nature."

[15]*Seattle v. Eze,* 111 Wn.2d 22, 30 n.2, 759 P.2d 366 (1988) (citing *Screws v. United States*, 325 U.S. 91, 101–02, 89 L. Ed. 1495, 65 S. Ct. 1031, 162 A.L.R. 1330 (1945)). *See also Seattle v. Slack*, 113 Wn.2d 850, 857, 784 P.2d 494 (1989).

[16]Compare *Seattle v. Huff,* 111 Wn.2d 923, 930, 767 P.2d 572 (1989).

The trial and review courts in this case declared SMC 12A.12.015(B)(1) unconstitutionally vague and overbroad. They did not rule on the reasonableness of the ordinance nor on whether it violates the equal protection rights of the homeless. Respondent raised those issues in the lower courts and renewed the arguments before this court.

■ An ordinance which makes no distinction between conduct calculated to harm and conduct which is essentially innocent is an unreasonable exercise of the government's police power.[17] This court has summarized the doctrine of "void for unreasonableness" as follows:

> An ordinance to be void for unreasonableness must be clearly and plainly unreasonable. The burden of establishing the invalidity of an ordinance rests heavily upon the party challenging its constitutionality. Every presumption will be in favor of constitutionality. And, if a state of facts justifying the ordinance can reasonably be conceived to exist, such facts must be presumed to exist and the ordinance passed in conformity therewith. These rules are more than mere rules of judicial convenience. They mark the line of demarcation between legislative and judicial functions.[18]

■ We have already concluded that SMC 12A.12-.015(B)(1) is not overbroad since it includes an element of specific intent. The ordinance distinguishes between conduct calculated to harm—*intentionally* interfering with pedestrian or vehicular traffic—and conduct which is essentially innocent—*unintentionally* interfering with traffic by merely being present upon a public sidewalk. Respondent has not overcome his heavy burden of proving that SMC 12A.12.015(B)(1) is "clearly and plainly unreasonable." We reject his reasonableness challenge to the ordinance.

Finally, we consider whether SMC 12A.12.015(B)(1) violates the equal protection rights of the homeless under the

---

[17]*See Seattle v. Pullman,* 82 Wn.2d 794, 800, 514 P.2d 1059 (1973).

[18](Citations omitted.) *Lenci v. Seattle,* 63 Wn.2d 664, 667–68, 388 P.2d 926 (1964).

fourteenth amendment to the United States Constitution[19] as argued by *amicus*.

Citing *Massachusetts Bd. of Retirement v. Murgia,*[20] *amicus* argues that the homeless should be recognized as a protected class because, among other reasons, they are "relegated to such a position of political powerlessness as to command extraordinary protection." *Amicus* argues, for example, that because RCW 29.07.070(4) provides that "[a]n address or post office box is required for a citizen to register to vote in Washington,"[21] the indigent homeless are thus excluded from the political process.

Respondent and *amicus* further argue that any pedestrian interference or begging ordinance necessarily disparately affects the homeless as a class, thus violating the equal protection rights of homeless persons. They cite no authority for this.

■ This court has rejected an equal protection challenge to a Seattle ordinance because "[t]he ordinance applies equally to *all persons* who possess the requisite criminal intent."[22] Similarly, in this case, the Seattle pedestrian interference ordinance applies equally to all persons. Nothing in the ordinance refers to economic circumstances or residential status.

---

[19]Neither *amicus* nor respondent has performed the analysis we require under *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) before this court will engage in separate state constitutional analysis of an issue. Consequently, we consider the equal protection question only within the federal constitutional context.

[20]427 U.S. 307, 313, 49 L. Ed. 2d 520, 96 S. Ct. 2562 (1976).

[21]RCW 29.07.070(4) provides that when applying for voter registration, an applicant is required to state, among other things, the applicant's "[p]lace of residence, street and number, if any, or post office or rural mail route address". *Amicus* does not address the question whether "general delivery" could not satisfy the "post office . . . address" requirement sufficiently to permit a homeless person to register to vote.

[22]*Seattle v. Slack,* 113 Wn.2d 850, 858, 784 P.2d 494 (1989) (upholding SMC 12A.10.010, the "prostitution loitering" ordinance).

Homelessness is a real national concern, particularly in metropolitan areas such as Seattle. We share compassion for those among us who suffer privation in the midst of plenty. However, the Seattle pedestrian interference ordinance with which we are here concerned is facially neutral. On the limited record before us there is no indication that Mr. Webster is indigent or homeless. His address in the police report merely indicates "transient." We cannot conclude from the limited information presented that homelessness is relevant to this case.

We have found no cases where the homeless have been judicially declared a protected class for purposes of Fourteenth Amendment analysis. While we recognize society's valid concern for the plight of the homeless, there is nothing in this record to support such a declaration in this case.

SMC 12A.12.015(B)(1) withstands a facial challenge to its constitutionality. We reverse the King County Superior Court and the Seattle Municipal Court and remand the case for trial.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and GUY, JJ., concur.

UTTER, J. (concurring in part and dissenting in part)— This ordinance is overbroad without a narrowing construction. I concur in the majority's judgment on the other points raised. I write separately to urge a limiting construction and to expand on some points raised in the briefs.

## I

Evaluation of an overbreadth claim requires the court to decide whether the ordinance before it sweeps within its prohibitions conduct protected by the First Amendment. See majority, at 640–41 (citing *Seattle v. Huff,* 111 Wn.2d 923, 925, 767 P.2d 572 (1989)). The First Amendment protects solicitation for charitable organizations, *Schaumburg v. Citizens for a Better Env't,* 444 U.S. 620, 632–33, 63 L. Ed. 2d 73, 100 S. Ct. 826, *reh'g denied,* 445 U.S. 972 (1980); musical performances, *Goldstein v. Nantucket,* 477 F.

Supp. 606 (D. Mass. 1979); handing out literature, *Martin v. Struthers,* 319 U.S. 141, 87 L. Ed. 1313, 63 S. Ct. 862 (1943); and collecting signatures for a petition, *Alderwood Assocs. v. Washington Envtl. Coun.,* 96 Wn.2d 230, 239–40, 635 P.2d 108 (1981). Since a person carrying out one of these activities may intend to cause a pedestrian to go around him or her, the ordinance broadly regulates a substantial amount of First Amendment conduct. Indeed, it is hard to imagine how it would be applied to any conduct not involving free speech.

The majority suggests that the intent requirement narrows the scope of the ordinance and thereby saves it from overbreadth challenge. Majority, at 641. The intent requirement does not save this ordinance absent a limiting construction.

*Criminal* intent saved the ordinance at issue in *Seattle v. Slack,* 113 Wn.2d 850, 784 P.2d 494 (1989), because the prostitution loitering ordinance at issue in *Slack* required intent to solicit prostitution. *Slack,* 113 Wn.2d at 856. The intent to solicit prostitution was basically incompatible with First Amendment activity because solicitation of sex for money is not protected speech. *Slack,* 113 Wn.2d at 856 (citing *State v. Carter,* 89 Wn.2d 236, 241, 570 P.2d 1218 (1977)).

Specific intent does not always save ordinances from overbreadth challenges, however. One can intend to cause others to take evasive action while engaging in protected First Amendment speech. For example, a person may approach someone on a street to seek a signature on a petition. The majority does not confront the question of whether such an action could permissibly result in a conviction for intentionally causing another to take evasive action. Instead, the majority states that the "ordinance does not prohibit *innocent* intentional acts which merely *consequentially* . . . cause others to take evasive action." (First italics mine.) Majority, at 641–42. While this statement is a reasonable interpretation of the ordinance, it leaves the reader uncertain as to how much protected

activity might be swept within the confines of the ordinance. This construction makes it quite clear that a person standing on the side of a sidewalk could not violate the ordinance because a pedestrian strayed from his path and then had to take evasive action. It leaves unanswered the question of whether a person seeking a signature could approach someone directly under this ordinance. It likewise does not help the trial court decide whether Webster's begging is constitutionally protected conduct or not.

In order to know whether this ordinance is substantially overbroad, we must know whether begging, the conduct to which it seems to be aimed, is constitutionally protected speech. Analysis of this question not only contributes to the overbreadth inquiry, it will aid trial courts in applying this ordinance to begging in a constitutional manner. I believe that begging is constitutionally protected speech, but that it is subject to reasonable time, place, and manner restrictions, like other speech. Admitting the constitutional status of begging does not involve giving beggars an unlimited right to harass potential donors. Because begging involves constitutionally protected speech, the legislation at issue requires a limiting construction in order to be upheld.

Three appellate courts have addressed the question of whether begging is constitutionally protected. *See Ulmer v. Municipal Court,* 55 Cal. App. 3d 263, 127 Cal. Rptr. 445 (1976); *Young v. New York City Transit Auth.,* 903 F.2d 146 (2d Cir. 1990); *C.C.B. v. State,* 458 So. 2d 47 (Fla. Dist. Ct. App. 1984). The California case cited dismissed the argument in a few sentences that begging is constitutionally protected, and provided no analysis of applicable precedent which could be useful in seriously addressing the issue. The Florida Court of Appeals, which held that begging was constitutionally protected, and the Second Circuit, which held that begging was not constitutionally protected speech by a 2–to–1 vote, provide careful analysis and useful guidance.

Both the Florida Court of Appeals and all three judges on the Second Circuit panel agreed that Supreme Court decisions on charitable solicitation and commercial speech

controlled the issue of whether begging is constitutionally protected. The Supreme Court has held repeatedly that charitable solicitation is protected speech. *See Schaumburg; Secretary of State v. Joseph H. Munson Co.,* 467 U.S. 947, 81 L. Ed. 2d 786, 104 S. Ct. 2839 (1984); *Riley v. National Fed'n of the Blind,* 487 U.S. 781, 101 L. Ed. 2d 669, 108 S. Ct. 2667 (1988).

The Supreme Court justified its holding that charitable solicitation is protected speech by stating that solicitation is "characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes . . .". *Schaumburg,* 444 U.S. at 632. A beggar's speech also informs the public about significant facts of social existence. *See Young,* 903 F.2d at 165 (Meskill, J., dissenting in part). The plaintiffs before the Second Circuit actually spoke with potential donors about public issues, such as the perceived inefficiency of the social service system in New York. *Young,* at 165. Even the statement "I am hungry" communicates a fact of social existence of some relevance to public discourse. The First Amendment protects the spread of information as well as the spread of ideas. In light of a Supreme Court decision holding that the statement "f⎯ the draft" deserves First Amendment protection, the rudimentary nature of a communication cannot deprive it of all First Amendment protection. *See Cohen v. California,* 403 U.S. 15, 29 L. Ed. 2d 284, 91 S. Ct. 1780, *reh'g denied,* 404 U.S. 876 (1971). Not surprisingly, the Florida Court of Appeals and the dissenter in the Second Circuit decision could not see a meaningful distinction between charitable solicitation and individual solicitation.

The Second Circuit majority tried in vain to distinguish the charitable solicitation cases on which Judge Meskill in dissent and the Florida Court of Appeals relied. It argued that these cases sought to protect the communication associated with solicitation without necessarily protecting solicitation itself. *Young,* 903 F.2d at 155 (majority opinion). The *Young* majority failed to account for the Supreme Court's cases striking down laws limiting the percentage of

contributions a fundraiser could keep. *See Riley; Munson.* Although the statutes considered in these cases directly regulated only the use of the money, not the communication associated with it, the Court struck down these restrictions. In so doing, the Court expressly declined "to separate the component parts of charitable solicitations from the fully protected whole." *Riley,* 487 U.S. at 796. In light of *Schaumburg, Riley,* and *Munson,* begging is fully protected speech.

Both the Florida Court of Appeals and Judge Meskill realized that Supreme Court cases holding that commercial speech is protected under the First Amendment also precluded holding that begging is unprotected. *C.C.B. v. State, supra* at 49 (citing *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Coun., Inc.,* 425 U.S. 748, 764–65, 48 L. Ed. 2d 346, 96 S. Ct. 1817 (1976); *Bates v. State Bar,* 433 U.S. 350, 53 L. Ed. 2d 810, 97 S. Ct. 2691 (1977)); *Young v. New York City Transit Auth., supra* at 165 (citing *Virginia State Bd. of Pharmacy*). The Supreme Court has held that advertising disseminates information which consumers use in making numerous private economic decisions. *Virginia State Bd. of Pharmacy,* 425 U.S. at 765. It reasoned that if the information provided by advertising is indispensable to the proper allocation of resources in a free enterprise system, it is also indispensable to the formation of intelligent opinions about how that system should be regulated or altered. For all these reasons, the First Amendment provides some protection to commercial speech. The communications of beggars also influence individual and collective decisions about the allocation of resources. If commercial speech is constitutionally protected, begging is protected as well.

Beggars speak when they solicit contributions. Yet, the Second Circuit majority considered begging to be conduct, rather than speech. It relied on Supreme Court cases having no relevance to the question of whether opening one's mouth to ask for money should be considered speech, namely, a flag–burning case, *Texas v. Johnson,* 491 U.S.

397, 105 L. Ed. 2d 342, 109 S. Ct. 2533 (1989), and a case about sleeping as a form of political protest, *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 82 L. Ed. 2d 221, 104 S. Ct. 3065 (1984). These cases, moreover, support the dissenter's position because the Court held that flag burning was protected and assumed, without deciding, that the First Amendment protected a sleep–in protest. *See Johnson; Clark,* 468 U.S. at 293.

The *Young* majority also argued, no doubt correctly, that subway passengers experience begging as intimidating, harassing, and threatening, but do not feel intimidated by private charities. *Young,* 903 F.2d at 156. To the extent the public feels harassed by beggars because of the immediacy of their plight and the poignancy of their message, the First Amendment forbids protecting the public from harassment. No municipality may forbid speech because of the negative feelings engendered in the listener. *Coates v. Cincinnati,* 402 U.S. 611, 615, 29 L. Ed. 2d 214, 91 S. Ct. 1686 (1971) ("mere public intolerance or animosity cannot be the basis for abridgment of these constitutional freedoms").

The *Young* majority's position is untenable. Judge Meskill's dissent and the unanimous opinion of the Florida Court of Appeals rely on a correct interpretation of applicable authority, whereas the Second Circuit majority relied upon the public's negative reaction to the homeless as the basis for its decision.

This does not mean that beggars are free to harass passersby without any restriction. On the contrary, a municipality may apply reasonable time, place, and manner restrictions on constitutionally protected begging. The ordinance before us contains no outright ban; rather, it consists of two manner restrictions, one forbidding aggressive begging, the other forbidding obstruction of traffic.[23]

---

[23]I agree with the majority that the aggressive begging sub–section is not before us, but mention it in order to put the ordinance in context.

An ordinance restricting protected speech on the sidewalk must be narrowly tailored to serve a significant government interest because the sidewalks are a public forum. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983). Other courts have struck down restrictions on speech activities designed to prevent obstruction of traffic when the regulation was too imprecise. *See, e.g., Howard Gault Co. v. Texas Rural Legal Aid, Inc.,* 848 F.2d 544 (5th Cir. 1988) (law regulating picketing to prevent traffic obstruction held overbroad); *see also Davenport v. Alexandria,* 710 F.2d 148 (4th Cir. 1983) (remanding to determine whether the size of sidewalks and other factors justifies restricting musical performances tending to impede traffic). We should construe this ordinance so that it only prohibits substantial obstructions of traffic, as other courts have when faced with overbroad traffic restrictions. *See, e.g., Ciccarelli v. Key West,* 321 So. 2d 472, 474 (Fla. Dist. Ct. App. 1975) (ordinance restricting loitering which "impedes or intends to impede" passage must include some provisions limiting its application to threats to public safety and breaches of the peace). While a municipality may regulate First Amendment activity to prevent obstruction of passage, *see Shuttlesworth v. Birmingham,* 382 U.S. 87, 91, 15 L. Ed. 2d 176, 86 S. Ct. 211 (1965), it may not restrict First Amendment rights just to prevent annoyance to the citizenry. *See Coates,* 402 U.S. at 615. The breadth of the definition of obstruction in this ordinance raises the specter of widespread unconstitutional application. It could be applied to any person who walks up to another person on the street to communicate a message, even if the person is free to walk around the speaker and the speaker does nothing to intimidate the other pedestrian.

Absent a limiting construction, this ordinance does not meet the substantial overbreadth test. It seems likely that the ordinance will be applied predominantly to First

Amendment activity. On the other hand, if these First Amendment activities substantially obstruct traffic, such application will be a legitimate restriction on the manner of speech. The ordinance should be upheld, but its application limited to substantial obstruction of traffic. Trial courts may then interpret "substantial obstruction" in such a way as to keep traffic flowing without prohibiting constitutionally protected speech which only annoys passersby. Because Mr. Webster has not been charged with aggressive begging, we do not pass on the constitutionality of that restriction on begging. The State's failure to charge Mr. Webster with aggressive begging indicates that he did not intimidate potential donors; rather, he obstructed traffic. This construction of the ordinance only assures that the traffic restriction is narrowly tailored to the State's interest supporting it. It does not speak to actual intimidation of potential donors.

## II

Precedent compels me to agree with the majority's conclusion that the ordinance before us is not unconstitutionally vague under the fourteenth amendment to the United States Constitution. The United States Supreme Court has held that the term "obstruct" is not unconstitutionally vague. *Cameron v. Johnson,* 390 U.S. 611, 616, 20 L. Ed. 2d 182, 88 S. Ct. 1335 (statute prohibiting picketing which obstructs ingress and egress is constitutional), *reh'g denied,* 391 U.S. 971 (1968). This ordinance is much clearer than the ordinance at issue in *Cameron* because it specifically defines obstruction as actions which "require another person . . . to take evasive action to avoid physical contact." SMC 12A.12.015(A)(3). This definition may increase the breadth of the ordinance, but it reduces its vagueness. As the foregoing discussion indicates, the concept of intent does not cure any vagueness a statute prohibiting obstruction of traffic may have. *Cf.* majority, at 644–45. But the introduction of an intent concept did not make the statute more vague than the statute upheld in *Cameron.*

## III

I also agree with the majority's conclusion that the Seattle ordinance does not violate principles of equal protection. The majority, however, does not address the briefs' arguments that the ordinance violates principles of equal protection by exempting picketing and protesting from its strictures, while regulating other forms of protected speech. Brief of Respondents, at 34–36; Brief of Amicus Curiae, at 2–3. The majority also creates some risk of confusion by addressing the argument that the ordinance violates principles of equal protection because it has a disparate impact upon the homeless. See majority, at 646–47.

The United States Supreme Court has held that a municipality may not ban picketing at a given location while exempting labor pickets from the general ban. *Police Dep't v. Mosley,* 408 U.S. 92, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972); *Carey v. Brown,* 447 U.S. 455, 461, 65 L. Ed. 2d 263, 100 S. Ct. 2286 (1980). The Court viewed the ordinances at issue in *Mosley* and *Carey* as content–based regulation of speech. This ordinance, however, does not discriminate amongst speech on the basis of content. A labor union picket would not be subject to the ordinance's strictures, but an individual passing out leaflets complaining about management would be. The ordinance puts a place and manner restriction on all types of speech and then exempts picketing and protest. Protesting and picketing are particular manners of expressing ideas; their exemption does not betray any content discrimination.

The majority creates some risk of misunderstanding by saying too much about the amicus' claim that the ordinance's treatment of the homeless as a class violates equal protection. The majority states that the record does not indicate that Mr. Webster is homeless, merely transient. Majority, at 647. The majority, therefore, should not reach the claim that the ordinance unconstitutionally discriminates against the homeless as a class. Its discussion of the important equal protection issue argued by the litigants

may be reserved to a case in which it can be properly raised.

Some risk of confusion is created by the majority's attempts to come to grips with the American Civil Liberty Union's argument. The ACLU did not claim that the ordinance is facially discriminatory. *Cf.* majority, at 647. Rather, the ACLU claimed that the ordinance had a "disparate impact" on the homeless. "Disparate impact" is a concept of civil rights statutes which the ACLU does not link to the equal protection cases involving an evaluation of actual administration of a statute. *See Saville v. Quaker Hill Place,* 531 A.2d 201, 240 (Del. 1987) (statute); *Griggs v. Duke Power Co.,* 401 U.S. 424, 430, 28 L. Ed. 2d 158, 91 S. Ct. 849 (1971) (statute); *Yick Wo v. Hopkins,* 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886) (unconstitutional administration of a facially neutral statute). In any case, the record in this case does not demonstrate that this ordinance has had a disparate impact upon the homeless. The lack of factual support in the record for the ACLU's contention resolves this claim. The majority resolves the ACLU's claim by stating that the ordinance is not facially discriminatory. Majority, at 647. This observation is correct, but unresponsive to a claim that the statute has discriminatory consequences.

The majority's assertion that there are no cases holding that the homeless are a suspect class is absolutely correct. Majority, at 647. But by stating that no case law supports the argument, the majority unnecessarily intimates the view that the argument has no merit. I suggest we address the question of whether concepts of equal protection law justify identifying the homeless as a suspect class in a case squarely raising the issue.

I would give each argument its due. I would address Webster's claim, which is properly before us on this record, and summarily dispose of the ACLU's claim, which is factually unsupported by the record. I concur in the majority's conclusion that the ordinance cannot be struck on grounds of equal protection on the record before us.

## Conclusion

I would hold that the ordinance is constitutional provided that it is construed to reach only substantial obstructions of traffic and remand the cause for trial.