IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32227-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PETER JOHN OSIADACZ, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Peter Osiadacz appeals his conviction for unlawful

possession of a firearm in the second degree. He argues that the definition of "firearm" in

former RCW 9.41.010(1) (2009)[1] criminalizes a substantial amount of constitutionally

protected conduct, and is therefore unconstitutionally overbroad. We disagree and affirm.

FACTS

Shortly after midnight on April 11, 2012, Cle Elum Police Officer Nicholas

Burson saw Peter Osiadacz's car run a stop sign. Officer Burson stopped Mr. Osiadacz

and asked for his driver's license, registration, and insurance. Officer Burson noticed a

---

[1] We note that former RCW 9.41.010(1) was renumbered RCW 9.41.010(9) per
the Laws of 2013, chapter 183, section 2.

small white tub behind Mr. Osiadacz's driver's seat, which Officer Burson recognized as a black powder container. Officer Burson gave Mr. Osiadacz a verbal warning and let him go. Mr. Osiadacz merged back onto the road.

After Mr. Osiadacz had driven away, Officer Burson performed a driver's check on his computer, which revealed Mr. Osiadacz's driver's license was suspended. Officer Burson then drove after Mr. Osiadacz, stopped him again, and walked up to his car. This time, Officer Burson shined his flashlight on the floorboard behind Mr. Osiadacz's seat and saw the butt of a pistol next to the canister of black powder. Based on his prior interactions with Mr. Osiadacz, Officer Burson believed Mr. Osiadacz was a convicted felon and was not allowed to have the handgun. Officer Burson returned to his patrol car and ran Mr. Osiadacz's information through dispatch, which confirmed Mr. Osiadacz's license was suspended and Mr. Osiadacz was a convicted felon.

Officer Burson returned to Mr. Osiadacz's car to discuss the handgun and discovered that while he was gone, Mr. Osiadacz had taken a box of doughnuts from the front floorboard of his car and used the doughnut box to conceal the black powder container. Officer Burson told Mr. Osiadacz it was illegal for him to have a handgun. Mr. Osiadacz told Officer Burson it was not a real gun, but a cap gun made by a toy company. Officer Burson removed the gun from Mr. Osiadacz's car, and he and Mr.

Osiadacz both examined the gun. Mr. Osiadacz insisted it was a toy cap gun, and Officer Burson then fired caps on the scene after making sure the gun was unloaded. Officer Burson believed the cap gun had been modified from a toy gun into a real gun, as

> it had an initial ram rod added to it for loading. It had a channel where the cap goes into the barrel for [sic] where it could combust the black powder so it had all of the elements of being able to fire a propellant.

Report of Proceedings (RP) at 98-99. Officer Burson also believed someone actually used the gun to shoot projectiles, "because the end of the barrel was mushroomed and cracked as if it had been over pressurized and then there was also a residue inside which was consistent with black powder." RP at 99. Mr. Osiadacz told Officer Burson he had added the ramrod and done the modifications himself. Officer Burson told Mr. Osiadacz his cap gun "really looked like a real gun," and Mr. Osiadacz responded, "'[Y]eah, it does look like a real gun . . . I fucked up . . . I'm sorry about that.'" RP at 101. Officer Burson seized the modified cap gun, gave Mr. Osiadacz a citation for driving with a suspended driver's license, and let Mr. Osiadacz go.

The State charged Mr. Osiadacz with second degree unlawful possession of a firearm under RCW 9.41.040(2)(a)(i). Among its witnesses, the State called Officer Burson and Kathy Geil.

Ms. Geil is a firearm and tool marker examiner at the Washington State Patrol Crime Laboratory in Seattle. She examined the modified gun in 2012 and again in April 2013. She testified that the gun in question was a toy cap gun originally designed to shoot a cork, but was modified so it could be loaded with black powder and shoot a pellet. Ms. Geil's testimony was supported by tests she conducted on the actual modified gun, and additional tests on a similar toy cap gun she purchased on eBay and modified to resemble the gun in question. She testified that the two modified toy guns were substantially similar, and the reason she built the replica was so not to destroy the gun in question by testing its capacity to fire a projectile by using incremental amounts of gunpowder. She concluded that the modified cap gun fell within the definition she would use in her field to define what a firearm is, "[b]ecause you can place an explosive material black powder in the weapon, place a projectile in there[,] give it a primer material system [i.e.,] percussion caps[,] pull a trigger and it will discharge a projectile." RP at 188. On cross-examination, Ms. Geil admitted that the toy gun, prior to any modification, also qualified as a "firearm" under her definition because the cork was a projectile which could be fired by a cap, a type of explosive.

4

Mr. Osiadacz also testified. He testified he found the cap gun in a car's trunk in the wrecking yard he owned. Mr. Osiadacz also testified he never modified the cap gun or fired black powder from the cap gun, and only used it as a toy.

At the end of the trial, the superior court and the parties discussed proposed jury instructions. Jury instruction 8 stated, "A 'firearm' is a weapon or device from which a projectile may be fired by an explosive such as gun powder." Clerk's Papers at 111. Mr. Osiadacz objected to jury instruction 8's definition of a firearm "on the basis it's overbroad, constitutionally overbroad." RP at 294. The superior court noted Mr. Osiadacz's objection and gave the instruction. The jury found Mr. Osiadacz guilty. This appeal followed.

## ANALYSIS

The constitutionality of a statute is reviewed de novo. *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008) (quoting *State v. Watson*, 160 Wn.2d 1, 5-6, 154 P.3d 909 (2007)). "A statute is presumed to be constitutional, and the party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt." *City of Bellevue v. Lee*, 166 Wn.2d 581, 585, 210 P.3d 1011 (2009) (internal quotation marks omitted). "The overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists."

5

*Virginia v. Hicks*, 539 U.S. 113, 122, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003) (alteration in original) (quoting *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988)).

Mr. Osiadacz contends the statutory definition of a firearm criminalizes a substantial amount of constitutionally protected conduct and is, therefore, overbroad. Former RCW 9.41.010(1) defines a "firearm" as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." Mr. Osiadacz further contends that because former RCW 9.41.010(1) is overbroad, the jury instruction based on that statute was improper.

"Overbreadth is a question of substantive due process—whether the statute is so broad that it prohibits constitutionally protected activities as well as unprotected behavior." *State v. McBride*, 74 Wn. App. 460, 464, 873 P.2d 589 (1994). Overbreadth doctrine creates a limited exception to the general rule that a party "will not be heard to challenge [a] statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). Washington courts apply federal overbreadth analysis to these challenges. *State v. Talley*, 122 Wn.2d 192, 210, 858 P.2d 217 (1993). While overbreadth challenges usually invoke First Amendment to the United

States Constitution rights, Washington courts have applied overbreadth analysis to other constitutionally protected rights as well. *See State v. Lee*, 135 Wn.2d 369, 389-90, 957 P.2d 741 (1998) (applying overbreadth analysis to an anti-stalking statute and determining that the statute did not improperly infringe on the constitutional right to travel and move freely in public places); *McBride*, 74 Wn. App. at 465 (applying overbreadth analysis to a statute prohibiting drug traffickers from frequenting areas known for drug activity and noting that such an analysis applies regardless of whether the constitutional right involved is free speech or the right to move about freely and travel).

The first step in overbreadth analysis is determining if a statute reaches constitutionally protected conduct. *Id.* at 464. "Statutes which regulate behavior and not purely speech will not be overturned unless the overbreadth is both real and substantial in relationship to the conduct legitimately regulated by the statute." *Id.* Even if a statute is substantially overbroad, it "will be overturned only if the court is 'unable to place a sufficiently limited construction upon the standardless sweep of [the] legislation.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *City of Seattle v. Webster*, 115 Wn.2d 635, 641, 802 P.2d 1333 (1990)).

Mr. Osiadacz concedes his modified toy gun "fit into the definition of a firearm under the challenged statutes and instruction 8." Br. of Appellant at 8. Mr. Osiadacz's

argument, then, is that the statutory definition of firearm is constitutionally overbroad because this provision criminalizes other people from possessing toy guns, and "[a] father or grandfather cannot be a criminal for possessing or being around a toy gun." Br. of Appellant at 9.

Here, Mr. Osiadacz fails to identify any constitutionally protected conduct that former RCW 9.41.010(1) prohibits. A father or grandfather does not have a constitutional right to possess a toy gun. Because the definition of a firearm does not criminalize constitutionally protected speech or conduct, it is not overbroad.

We have held that former RCW 9.41.010(1) and RCW 9.41.040 do not criminalize possessing toy guns. These statutes prohibit certain persons from possessing a "gun in fact." *See State v. Raleigh*, 157 Wn. App. 728, 734, 238 P.3d 1211 (2010) (stating that the relevant issue is whether the firearm was a "gun in fact," capable after simple repairs of inflicting violence, rather than a toy gun). Mr. Osiadacz's real issue with jury instruction 8 was not one of constitutional overbreadth, but that the instruction did not sufficiently distinguish between a toy cap gun that fired a projectile unlikely to inflict violence, and a gun in fact that could fire a projectile likely to inflict violence. Had Mr. Osiadacz proposed an instruction that distinguished toy guns from a gun in fact,

8

No. 32227-1-III
*State v. Osiadacz*

consistent with the holding in *Raleigh*, the true issue would have been preserved. As the

true issue was not preserved below or argued on appeal, it will not be addressed.

Affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Korsmo, J.                    Fearing, J.

9