# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73525-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| STANLEY S. SADLER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 27, 2017 |

SPEARMAN, J. — Stanley Sadler challenges his conviction of one count of attempted commercial sexual abuse of a minor and one count of communication with a minor for immoral purposes. He argues that the trial court erred in redacting email chains, admitting opinion testimony, calculating his sentence, and imposing unconstitutional conditions of custody. Additionally, he argues that the prosecutor committed flagrant misconduct during closing argument. Sadler raises several further arguments in a statement of additional grounds. Finding no error, we affirm.

## FACTS

Stanley Sadler posted a sexually explicit ad on Craigslist seeking a young female for a sexual liaison. Vice Detective Tye Holand of the Seattle Police

Department responded to Sadler's ad because of its references to youth. Holand posed as a fifteen-year-old prostitute named "Jen."

Jen and Sadler exchanged emails. Jen repeatedly stated that she was fifteen. Sadler sometimes said he did not believe Jen was fifteen and asked her to say she was eighteen. Sadler and Jen also talked on the phone.[1] Sadler told Jen that because of her age, they could both be in a lot of trouble.

After further email communication, Sadler proposed the details of their meeting. He told Jen that he would not pay for sex but would give her $150 as a gift. Sadler asked Jen to type that she was eighteen. Jen replied that she was fifteen. After several emails, Jen sent another email that stated she was "'consenting and 18. You have what you want[.]'" Verbatim Report of Proceedings (VRP) (03/02/15) at 74.

The next morning Jen called Sadler and reminded him that she was only fifteen. After the call, Sadler emailed Jen and said he was not agreeing to have sex with a minor. He said that he only continued to communicate with her because he believed she was over eighteen and that he was only meeting her so they could talk. Jen responded that she did not want Sadler to waste her time. Sadler replied that he was on his way.

---

[1] Jami Suedel, a twenty-six year old female police officer, pretended to be Jen in phone conversations.

2

A few minutes later Sadler arrived at the meeting place and was arrested. In a search incident to arrest, officers found $216 cash. Sadler was charged with attempted commercial sexual abuse of a minor and communicating with a minor for immoral purposes.[2]

At trial, Sadler argued that he was not guilty because he never believed Jen was a minor. He contended that he engaged in a lawful role-playing game with an adult who was pretending to be a minor. Sadler sought to admit email chains with other women. He argued that the emails demonstrated that he was seeking a long-term sexual relationship with a consenting adult and that he knew there were many "pretenders and scammers" on Craigslist. VRP (03/03/15) at 129.

The trial court admitted nine of the email chains with no redaction, redacted six email chains, and ruled two inadmissible. A jury convicted Sadler of both charges. Sadler appeals.

DISCUSSION

Redacted Emails

Sadler sought to admit seventeen email exchanges between himself and various women who responded to his ads. The ads had subject lines like "Attractive 50ish seeks petite 18ish – move in & leave the rest behind" and "Mature 50ish looking for young 18ish ... unprotected and fertile." Clerk's Papers

---

[2] Sadler was also charged with tampering with evidence. He was acquitted on this charge and it is not at issue in this appeal.

3

(CP) at 233. In some of the exchanges, Sadler's correspondent identified herself as a woman in her 20s, 30s, or 40s. Sadler argued that the emails were relevant because they demonstrated that his exchanges with Jen were part of a general scheme to seek a long-term sexual relationship with a consenting adult. He asserted that they also served to rebut the State's suggestion that "he was using the Internet to troll for underage sexual partners." Brief of Appellant at 24. Sadler also contended that the emails showed that because he knew there were many "scammers" on Craigslist, any agreement with Jen was contingent on confirming that she was an adult. VRP (03/03/15) at 128.

The trial court admitted those portions of the emails showing that Sadler communicated with women who identified themselves as adults and his knowledge of internet scams. The trial court redacted as irrelevant those portions in which Sadler expressed his desire to have a long-term relationship and father a child, described his background, and detailed anticipated sexual encounters. In response to Sadler's argument that the emails were relevant as context, the court found that any relevance was outweighed by the passages' cumulative nature and their tendency to confuse the jury.

We review a trial court's evidentiary rulings for abuse of discretion. State v. Brockob, 159 Wn.2d 311, 348-49, 150 P.3d 59 (2006) (citing State v. Vreen, 143 Wn.2d 923, 932, 26 P.3d 236 (2001)). We will not disturb the trial court's decision absent a clear showing that it was manifestly unreasonable or exercised

4

on untenable grounds. State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

Evidence is generally admissible if it is relevant. ER 402. Evidence is relevant if it has any tendency to make the existence of any consequential fact more or less probable than it would be without the evidence. ER 401. The trial court has discretion to determine whether evidence is relevant. Brockob, 159 Wn.2d at 348 (citing Vreen, 143 Wn.2d at 932). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger that it will be cumulative or confusing. ER 403.

Here, the trial court found relevant and admitted emails that showed Sadler's interest in relationships with adult women. But it excluded as irrelevant email passages regarding Sadler's purported interest in a long-term relationship and possibly being a father or that involved his self-descriptions or proposed sexual activities. Because the redacted passages do not make it more or less probable that Sadler believed Jen was a minor, intended to have sex with her, or intended to pay her for sex, we conclude that the trial court did not abuse its discretion in determining that the passages were irrelevant. And even if relevant, we agree with the trial court that the excluded passages were cumulative. Several ads admitted into evidence, including the one Holand responded to, expressed Sadler's interest in a sexual partner who was willing to live with him and have a child. The trial court's decision is not manifestly unreasonable or based on untenable grounds. There was no error.

5

However, Sadler asserts that, by not admitting portions of the email chains, the trial court violated his constitutional right to present a defense. Criminal defendants have a due process right to present a defense. State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (citing State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)). The right to present a defense includes the right to present relevant evidence. Id.

Relying on Jones, Sadler contends that exclusion of redacted portions of the emails prevented him from arguing his theory of the case. But his reliance is misplaced. In Jones, the defendant was charged with rape and the trial court excluded his testimony that the alleged victim consented to sexual intercourse. The Supreme Court reversed his conviction because the testimony was relevant to the charged crime and, if believed, constituted a complete defense. Jones, 168 Wn.2d at 721. In this case, however, the excluded evidence was not relevant to any element of the charged crimes. That Sadler wanted a long term relationship or to father a child has no bearing on whether he believed Jen was an adult. Additionally, here, Sadler testified at length to his theory of the case and supported that theory by reference to the admitted emails. We reject Sadler's claim that the trial court violated his right to present a defense by redacting the email chains.

Sadler next contends that the redacted passages were necessary to corroborate his testimony that he was seeking a long-term relationship with an adult. He argues that because his credibility was under attack, the trial court's

refusal to admit corroborating evidence was error. In particular, he cites the State's argument on rebuttal comparing Sadler's claim that he was looking for a long term relationship on Craigslist to "saying you're looking at Playboy for the articles. It's not reality." VRP (3/9/15) at 95-96. The argument is unpersuasive because Sadler himself undercut the claim in his own testimony. When asked about the nature of the relationship he sought, Sadler testified "I'm not limited to the long-term monogamous relationship, but casual encounters, I'm open to that, also." VRP (3/5/15) at 79. He also testified that he "might consider meeting [with a prostitute]." Id. at 84.

We conclude that Sadler's challenges to the redactions of the email chains are without merit.

Opinion Testimony

Sadler contends that the trial court erred in admitting improper opinion testimony. Generally, a witness may not offer an opinion as to the guilt of the defendant. State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (citing City of Seattle v. Heatley, 70 Wn. App. 573, 577, 854 P.2d 658 (1993)). Opinion testimony is "'[t]estimony based on one's belief or idea rather than on direct knowledge of facts at issue.'" Id. at 760 (quoting Dubria v. Smith, 224 F.3d 995, 1486 (9th Cir. 2000).

In this case, Vice Detective Holand testified to his experience posing online as an underage prostitute. He stated that when he identifies himself as a minor, about half of his correspondents stop communicating. VRP (03/03/15) at

30. Holand testified that another set of correspondents "are kind of just playing a game. They'll communicate for a little while, they'll stop communicating, you won't hear from them." Id. The remaining correspondents continue communicating and Holand tries to set up a meeting with them. If the correspondent agrees to meet, Holand prepares to arrest him at the meeting place.

Sadler contends that this testimony was improper. He first asserts that when Holand testified that he only arrests people who continue to communicate and progress to an in-person meeting, he conveyed the opinion that Sadler was guilty. Sadler also contends that Holand's testimony referring to people "who are kind of just playing a game," was an improper opinion that Sadler fit the profile of a person engaged in unlawful activity. Sadler argues that the purported opinion undercut his claim that he was engaged in a lawful role-playing game with Jen. Br. of App. at 34.

These arguments are without merit. Holand testified to his experience in undercover work. He did not offer an opinion on Sadler's guilt. Holand explained that by describing some correspondents as "playing a game," he meant that they communicated for a time then stopped communicating. The testimony clearly did not refer to people engaged in role-playing games. We reject Sadler's argument that Holand's testimony amounted to an opinion on Sadler's guilt.

Prosecutorial Misconduct

Sadler next contends that the prosecutor committed flagrant misconduct by appealing to the jury's emotions and disparaging defense counsel, which deprived him of a fair trial. To prevail on a claim of prosecutorial misconduct, Sadler must establish that the prosecutor's conduct was improper and prejudicial. State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (citing State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). Because Sadler did not object to the alleged misconduct at trial, any error is waived unless the misconduct was flagrant and caused prejudice that "'could not have been neutralized by an admonition to the jury.'" Id. (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

"[A] prosecutor has wide latitude to argue reasonable inferences from the evidence." In re Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (citing Thorgerson, 172 Wn.2d at 448). But the prosecutor may not "'use arguments calculated to inflame the passions or prejudices of the jury.'" Id. (quoting American Bar Association, Standards for Criminal Justice std. 3-5.8(c) (2d ed. 1980)). It is also improper for the prosecutor to disparage defense counsel. Thorgerson, 172 Wn.2d at 451 (citing State v. Warren, 165 Wn.2d 17, 29-30, 195 P.3d 940 (2008)). We review a prosecutor's comments in the context of the entire case. Id. (citing Russell, 125 Wn.2d at 86).

Sadler asserts that two of the prosecutor's statements improperly appealed to the jury's emotions. App. Br. at 36. We disagree. In closing argument, the State

summarized the evidence that Sadler was guilty of attempted sexual abuse of a

minor. The prosecutor stated:

> Now, maybe you're thinking, but he didn't actually pay for anything.
> It doesn't matter. Even the completed crime doesn't require that you
> actually pay, just that you make that offer. And that's because the
> law is not going to stand by and wait until Mr. Sadler's actually having
> sex with a kid, before it's a crime.

VRP (03/09/15) at 62. The argument is not improper. The prosecutor merely

explained the attempt element of the crime to the jury.

Sadler also argues that the prosecutor's comment regarding Sadler's

reference to the television show To Catch a Predator was improper. In Sadler's

emails to Jen, he described the show as "scary shit." VRP (03/05/15) at 10. At

trial, Sadler testified that the show involved police officers posing as underage

girls on the internet, who attempted to arrange a meeting with and then arrest the

men who communicated with them. The prosecutor referred to these comments

in rebuttal and argued:

> On that topic, why is To Catch a Predator so scary for Mr.
> Sadler? Did you listen to his answer when he was testifying? It
> sure didn't sound like he was saying it's scary because there's
> kids out there getting picked up, it was scary for the guys who
> get into it. If that doesn't worry you, it should.

Id. at 98-99.

The prosecutor argued a reasonable inference from the evidence. Sadler

stated that the show was about catching men who were attempting to have sex

with underage girls. A reasonable inference from his email was that the show

was scary for men who used the internet to search for sexual relationships with

10

minors. It may be that the prosecutor acted improperly in telling the jury it should be worried by Sadler's attitude. But even if the comment was improper, any objection was waived because the error could have been cured by an instruction to the jury.

Sadler also argues that the prosecutor improperly disparaged defense counsel. In closing, the prosecutor stated that Sadler had prepared a story that purported to explain each fact, but he argued that Sadler's version of events was not credible. Sadler asserts that these arguments were improper because they depicted defense counsel as deceptive. But because the prosecutor did not question defense counsel's honesty or improperly disparage defense counsel, we reject Sadler's argument.

Cumulative Error

Next, Sadler contends that the accumulation of errors in this case require a new trial. Multiple errors may justify reversal even if the errors individually do not warrant reversal. State v. Coe, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). But because Sadler has failed to establish any errors, the cumulative error doctrine does not apply.

Sentence Calculation

Sadler next argues that the trial court erred in calculating his sentence. He asserts that attempted sexual abuse of a minor and communication with a minor for immoral purposes constitute the same criminal conduct and should be treated as one for sentencing purposes. We disagree.

When the sentencing court determines that current offenses constitute the same criminal conduct, the offenses are treated as one crime. RCW 9.94A.589(1)(a). For convictions to constitute the same criminal conduct, the crimes must (1) require the same criminal intent; (2) occur at the same time and place; and (3) involve the same victim. Id. This court reviews the trial court's decision as to whether multiple offenses constitute the same criminal conduct for abuse of discretion. State v. Graciano, 176 Wn.2d 531, 540, 295 P.3d 219 (2013).

The two crimes charged in this case have different statutory intent elements. Attempted commercial sexual abuse of a minor requires the specific intent to enter into a sex-for-pay agreement with a minor. Communication with a minor for immoral purposes requires an "immoral purpose," or the intent to promote a minor's exposure to and involvement in sexual misconduct. The trial court did not err in ruling that Sadler's offenses did not share the same criminal intent. See State v. Chenoweth, 185 Wn.2d 218, 223, 370 P.3d 6 (2016) (holding that the crimes of rape of a child and incest had different criminal intents because the intent to have sex with a child is different than the intent to have sex with someone related to you).

However, Sadler contends that his intent did not change from one crime to the next and asserts that his offenses therefore shared the same intent. He relies primarily on State v. Tili, 139 Wn.2d 107, 123-24, 985 P.2d 365 (1999). But Tili is inapposite because that case concerns multiple counts of the same crime, not,

as here, two crimes with different statutory intent elements. Id. We reject Sadler's argument.

Conditions of Community Custody

Sadler next argues that the trial court imposed unconstitutional conditions of community custody. The sentencing court has authority to impose "crime-related prohibitions." RCW 9.94A.703(3)(f). A crime-related prohibition "prohibit[s] conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). We review a trial court's imposition of crime-related conditions of community custody for abuse of discretion. State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015) (citing State v. Cordero, 170 Wn. App. 351, 373, 284 P.3d 773 (2012)).

In this case, the sentencing court imposed several conditions of community custody, including:

> 4. [O]btain a sexual deviancy evaluation with a State certified therapist approved by your Community Corrections Officer (CCO) and follow through with all recommendations of the evaluator. Should sexual deviancy treatment be recommended, enter treatment and abide by all programming rules, regulations, and requirements....
> 5. Inform the supervising CCO and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such.
> . . . .
> 27. The defendant shall not visit any internet websites or chat rooms where escort or prostitution services are advertised or provided. No use of internet with[out] approval of treatment provider.

CP at 409-10. Sadler challenges conditions 5 and 27.

13

The challenged conditions concern Sadler's sexual contact and his use of the internet. The record contains a great deal of evidence connecting Sadler's crime to sexual contact and internet usage. The court also had before it the Department of Corrections' presentence report. The presentence report provides further details concerning Sadler's history of sexual deviancy and his history of using the internet to further this deviancy. We conclude that the trial court did not abuse its discretion in imposing the crime-related prohibitions on Sadler's sexual contact and internet usage.

But Sadler contends that the challenged conditions improperly prohibit constitutionally-protected conduct. The sentencing court may impose conditions that reach a defendant's constitutional rights provided those conditions are imposed sensitively. State v. Bahl, 164 Wn.2d 739, 757, 193 P.3d 768 (2008) (citing State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)). Limitations on constitutionally-protected conduct must be "narrowly tailored and directly related to the goals of protecting the public and promoting the defendant's rehabilitation." Id. Sadler argues that, in this case, the conditions are not narrowly tailored or sensitively imposed. He asserts that, because he is innocent, he is not amenable to treatment and will not have a treatment provider. He therefore argues that conditions 5 and 27 amount to total and unreasonable bans on internet usage and sexual contact.

Sadler's argument is without merit. Condition 4 requires Sadler to obtain a sexual deviancy evaluation and comply with treatment recommendations.

14

Compliance with this condition ensures that Sadler will have a treatment provider who could give approval for sexual contact and internet usage. The conditions are not total bans on protected activity. The sentencing court did not abuse its discretion in imposing the challenged conditions of custody.

Costs on Appeal

Finally, Sadler asks that no costs be awarded on appeal. In light of RAP 14.2, however, the request is properly heard by a commissioner of this court. When a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Here, Sadler was found indigent by the trial court. If the State has evidence indicating that Sadler's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

Statement of Additional Grounds

Sadler raises seven grounds for relief in a statement of additional grounds (SAG). The core of Sadler's argument in each of these asserted grounds for relief is that he did not believe Jen was a minor.

Sadler first contends that the trial court erred because he is actually innocent. Some states have adopted an actual innocence doctrine, "in which innocence itself provides a basis for relief." In re Weber, 175 Wn.2d 247, 256, 284 P.3d 734 (2012) (citing Schlup v. Delo, 513 U.S. 298, 315, 115 S. Ct. 851,

130 L. Ed.2d 808 (1995)). Because Washington has not adopted the doctrine, we reject Sadler's claim. Id. at 262.

Sadler next argues that the police engaged in outrageous conduct that violated due process. The State's conduct may violate due process when it is "so shocking that it violates fundamental fairness." State v. Lively, 130 Wn.2d 1, 19, 921 P.2d 1035 (1996) (citing State v. Myers, 102 Wn.2d 548, 551, 689 P.2d 38 (1984)). Only egregious conduct supports such a claim. Id. Mere deception is not sufficient. Id. (citing United States v. Sneed, 34 F.3d 1570, 1577 (10th Cir. 1994)). We reject Sadler's argument because he points to no egregious police conduct. At most, Holand and Suedel deceived Sadler by their impersonation of a 15-year-old girl, but mere deception does not constitute outrageous conduct. Id. The email record shows only that Holand provided the opportunity for Sadler to commit a crime. He did not coerce Sadler or overcome Sadler's resistance to committing that crime.

Sadler also asserts that the police and the prosecutor destroyed the evidence of their purported outrageous conduct. He appears to rely on the fact that his phone conversations with Suedel (posing as Jen) were not recorded and because Suedel testified that she destroyed the notes she took during her call with Sadler after she finished writing her report. We reject the argument because we are aware of no authority, and Sadler cites none, which holds that this conduct is unlawful or outrageous.

16

Sadler contends that the statutes are unconstitutionally vague because they require proof that the defendant believed he was communicating with a minor, but they do not define "believe." SAG at 3. A statute is void for vagueness if (1) it does not define a criminal offense with sufficient clarity that ordinary people can understand what conduct is prohibited or if (2) it fails to provide ascertainable standards of guilt to protect against arbitrary enforcement. City of Spokane v. Douglass, 115 Wn.2d 171, 182-83, 795 P.2d 693 (1990) (citing Kolender v. Lawson, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed.2d 903 (1983)). The challenging party has the burden of proving vagueness beyond a reasonable doubt. Haley v. Medical Disciplinary Bd., 117 Wn.2d 720, 739, 818 P.2d 1062 (1991) (citing Seattle v. Eze, 111 Wn.2d 22, 26, 759 P.2d 366 (1988)). Sadler provides no argument that "believe" has any meaning other than its ordinary usage or that the statute as written, invites arbitrary enforcement. We reject this claim.

Next, Sadler contends that the statutes are overbroad because they criminalize constitutionally protected free speech. Sadler argues that because he believed Jen was an adult, he was engaging in protected speech. But the jury rejected his testimony on this issue. It found that Sadler believed he was communicating with a minor. Thus, Sadler's argument fails because communicating with a minor for immoral purposes or to solicit prostitution is not constitutionally protected speech. City of Seattle v. Webster, 115 Wn.2d 635,

648, 802 P.2d 1333 (1990) (citing Seattle v. Slack, 113 Wn.2d 850, 856, 784 P.2d 494 (1989)). Sadler's argument is without merit.

Sadler next argues that the evidence was insufficient to support his convictions. Sadler contends that the State failed to disprove his defense that he did not believe Jen was a minor and that insufficient evidence supports the conclusion that he believed Jen was a minor.[3] We reject these arguments.

The evidence is sufficient to support a criminal conviction if, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Joy, 121 Wn.2d 333, 338, 851 P.2d 654 (1993) (citing State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that may be drawn therefrom. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

In support of his arguments, Sadler relies on the emails in which he stated that Jen was eighteen, he knew she was just doing "age-play," he would not pay for sex, and he was meeting only to hang out. He also asserts that the emails from Jen were so contradictory that no reasonable person would have believed them. However, he ignores those emails in which Jen repeatedly stated that she was a minor as well as Suedel's and Holand's testimony that they told Sadler Jen

---

[3] Sadler also asserts that the sufficiency of the evidence must be reviewed under a heightened standard because his First Amendment rights are at stake. We reject this argument because, as we earlier discussed, communicating with a minor for immoral purposes or to solicit prostitution is not constitutionally protected speech. City of Seattle v. Webster, 115 Wn.2d at 648.

was fifteen. When this evidence is viewed in the light most favorable to the State and taken as true, a rational juror could have found that Sadler believed Jen was a minor.

Next, Sadler contends that the prosecutor committed flagrant misconduct. In addition to the arguments raised by counsel, Sadler asserts that the prosecutor presented a misleading summary of the evidence in opening argument and condoned Holand's deceptive conduct. To prevail on a misconduct claim, Sadler must establish that the prosecutor's conduct was improper and prejudicial. Thorgerson, 172 Wn.2d at 442 (citing Magers, 164 Wn.2d at 191). Because Sadler did not object to the alleged misconduct at trial, any error is waived unless the misconduct was flagrant and caused prejudice that "'could not have been neutralized by an admonition to the jury.'" Id. (quoting Russell, 125 Wn.2d at 86).

In opening argument, the prosecutor showed excerpts from Sadler's emails to Jen in a PowerPoint. Sadler correctly argues that the presentation was improper because the emails had not yet been admitted into evidence. However, because the entire email chain between Sadler and Jen was later admitted into evidence without objection, its premature display to the jury did not prejudice Sadler in any discernable way. We reject Sadler's argument.

Sadler also asserts that the PowerPoint was improper because it did not include the email in which Jen stated she was eighteen or emails in which Sadler referred to age-play. Sadler asserts that the prosecutor concealed exonerating

19

facts by not informing the jury that Jen stated that she was an adult. The entire email exchange was admitted as evidence and both Holand and Sadler testified to Jen's email stating that she was eighteen. We reject Sadler's argument as unfounded.

Sadler further contends that the PowerPoint constituted an unfair surprise because he could not see it during opening argument and so was unable to object. The claim is without merit. Because he was represented by counsel, Sadler had no authority to object to the PowerPoint display. And it does not appear from the record that his attorney was either surprised by the display or had any difficulty observing it.[4]

Finally, Sadler contends that he received ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's conduct was deficient and resulted in prejudice. State v. Humphries, 181 Wn.2d 708, 719-720, 336 P.3d 1121 (2014) (citing Strickland v. Washington, 466 U.S. 668, 687-88, 108 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). If either part of the test is not satisfied, the claim fails. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996)). Deficient performance is not shown by

---

[4] At trial, after the State's opening argument, defense counsel asked that accommodations be made so that Sadler could see the screen the State was using to publish exhibits. The trial court allowed Sadler to move in order to see the screen and provided him with paper copies of the exhibits. Sadler's counsel did not object that he was unable to see the presentation during opening argument.

matters that go to trial strategy of tactics. Id. at 77-78. Review of an attorney's performance is highly deferential. Strickland, 466 U.S. at 689.

Sadler asserts that he received ineffective assistance because counsel failed to adequately assert his innocence, argue that Sadler's conduct was protected by the First Amendment, investigate outrageous police conduct, and object to the prosecutor's opening statement. Sadler thus contends that counsel was deficient for failing to assert the arguments set out in his SAG. But as these arguments are without merit, counsel's failure to assert them was not deficient, but, instead, a legitimate trial strategy. We reject Sadler's claim.

Affirmed.

WE CONCUR: