Raymond SAVILLE, Complainant Before the State Human Relations Commission, Appellee Below-Appellant,

v.

QUAKER HILL PLACE, Respondent Before the State Human Relations Commission, Appellant Below-Appellee.

Supreme Court of Delaware.

Submitted: June 23, 1987.
Decided: Sept. 10, 1987.

Neilson C. Himelein, Community Legal Aid Soc., Inc., Wilmington, for appellee below-appellant.

Richard R. Wier, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellant below-appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

HORSEY, Justice:

This appeal presents this Court with a question of first impression: the construction and application of Delaware's "Equal Rights to Housing" Act, 6 *Del.C.*, chapter 46, as amended in 1980 (62 *Del.Laws*, chapter 330), in the context of a claim by a handicapped person of housing discrimination through disparate treatment in violation of section 4603(1).[1] Raymond Saville appeals from a Superior Court decision reversing a finding by the State Human Relations Commission (the "Commission"), that the appellee, Quaker Hill Place ("Quaker Hill") unlawfully discriminated against him, in violation of 6 *Del.C.* § 4603(1).

On the basis of the briefs and the record we find that Saville elected to pursue a claim for disparate treatment and not a claim for disparate impact against handicapped persons generally. We further find Saville to have failed to produce substantial evidence of an intent to discriminate by Quaker Hill. Hence, Saville's section 4603 claim fails, and we must affirm the judgment of Superior Court reversing the final order of the Commission and dismissing Saville's complaint. However, we also conclude that section 4603(1) does encompass and authorize housing discrimination claims based on disparate impact (as well as disparate treatment) for which an intent to discriminate is not a prerequisite for relief.

I

The facts underlying these proceedings are fully set forth in two Superior Court opinions. *Quaker Hill Place v. State Human Relations Comm'n*, Del.Super., 498 A.2d 175 (1985) ("*Quaker Hill I*"); *Quaker Hill Place v. Saville*, Del.Super., 523 A.2d 947 (1987) ("*Quaker Hill II*"). They will thus be repeated here only as necessary.

Saville, a Vietnam war veteran, was diagnosed by his treating psychiatrist as suffering from a "Bi-Polar Disorder, Mixed Type," an apparent form of manic depression. Saville applied for housing at Quaker Hill, a private, federally subsidized housing project which provides apartments to handicapped and elderly persons. On his application, Saville wrote that he was "mentally handicapped, disabled." He submitted with his application the names of three personal references. In addition, in response to an inquiry by Quaker Hill, Saville's landlord at the time rated Saville a "good" tenant, the highest rating, and remarked that he possessed "good character." Saville's treating psychiatrist, in an attending physician's report to Quaker Hill, opined that Saville's condition was "stable," and his prognosis "good—with treatment." However, the psychiatrist also remarked that Saville "has had some charges for unusual behavior in the past." The Superior Court opinion contains a comprehensive list of the unusual behavior in which Saville had in fact or allegedly engaged. *Quaker Hill II*, 523 A.3d at 951–52.

Quaker Hill rejected Saville's application. Saville brought suit before the Commission, claiming that Quaker Hill had unlawfully discriminated against him on the basis of a handicap, in violation of 6 *Del.C.* § 4603(1). Quaker Hill countered that it rejected Saville not because of his handicap, but because of his past unusual behavior. The Commission initially ruled in favor of Saville, but the Superior Court reversed and remanded. *Quaker Hill I*, 498 A.2d at 184. On remand, the Commission again ruled in Saville's favor. The Superior Court again reversed, this time dismissing Saville's complaint. *Quaker Hill II*, 523 A.2d at 968. Saville appeals that second reversal and dismissal.

---

**1.** 6 *Del.C.* § 4603(1) provides, in pertinent part:

**§ 4603. Unlawful practices.**

Except as provided in § 4604 of this title, it shall be an unlawful practice for any person, because of race, age, marital status, creed, color, sex, *handicap* or national origin of another person, to:

(1) Refuse to sell or rent, or refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny to any person, a dwelling offered to the public for sale or rent.... (emphasis added).

## II

■ We first address the general question of the scope of Delaware's housing discrimination statute, as amended in 1980 to extend its coverage to protect the handicapped from such discrimination. In determining the scope of the housing discrimination statute, this Court must ascertain and give effect to the intent of the law as expressed by the Legislature in the statute itself. The first sentence of section 4602 of the housing discrimination statute, prior to the 1980 amendments, sets forth its purpose:

**4602. Purpose and Construction.**

This chapter is intended to eliminate, as to housing offered to the public for sale or rent, discrimination based upon race, age, marital status, creed, color, sex or national origin, and to provide an administrative procedure through which disputes concerning the same may effectively and expeditiously be resolved with fairness and due process for all parties concerned.

6 *Del.C.* § 4602. The Legislature emphasized that the statute "be liberally construed to the end that its purposes may be accomplished." *Id.* As seen by the language adopted by the Legislature, the scope of the statute is broad, encompassing all situations where the basic purpose of the statute (the elimination of discrimination) may be achieved.

On July 8, 1980, the Delaware Legislature amended the housing discrimination statute to expressly protect the handicapped from discrimination in housing. The definition of "handicap" is set forth in section 4601, which provides, in partinent part, that:

Handicap means, with respect to a person:

a. A physical or mental impairment which substantially limits 1 or more of such person's major life activities;

b. A record of having such an impairment; or

c. Being regarded as having such an impairment.

6 *Del.C.* § 4601(7). The scope of this protection for the handicapped is as broad as the scope created by the pre-amendment statute because the Legislature inserted the term "handicap" to the list of protected groups in section 4602. *See* 6 *Del.C.* § 4602. Additionally, to fully incorporate the handicapped into the housing discrimination statute, the Legislature inserted the term "handicap" into the introductory language and pertinent subdivisions of section 4603 (defining the practices which the statute will deem as unlawful). *See* 6 *Del.C.* § 4603(4), (6).

Although 6 *Del.C.* § 4603(1) prohibits discrimination in housing based on a handicap, the parties disagree as to whether the statute requires proof of an intent to discriminate. Since this case represents the Court's first construction of this provision, the underlying elements and rationale of section 4603(1) must be· determined.[2]

■ In the absence of Delaware decisions construing this provision, the parties understandably urge reliance on decisions construing various federal antidiscrimination statutes. We agree that they are of assistance in determining what elements must be proven under section 4603. *Cf. Riner v. National Cash Register*, Del. Supr., 434 A.2d 375, 376 (1981). Saville urges reliance on decisions construing Title VIII, 42 U.S.C. §§ 3601–3619, 3631, especially section 3604 (banning discrimination in sale or rental of housing), and Section 504 of the Federal Rehabilitation Act, 29 U.S.C. § 794. He emphasizes that these decisions would not require a showing of intentional discrimination. *But see Alexander v. Choate*, 469 U.S. 287, 299–301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985). Quaker Hill urges reliance on decisions

---

**2.** This Court previously construed only a portion of the housing discrimination statute. *See Lindsay v. Beaver Brook Section One Inc.,* Del. Supr., 322 A.2d 13 (1974) (primarily construing 6 *Del.C.* § 4611 (providing the right of appeal, procedure, and scope of review of the housing discrimination statute)). Unfortunately, the Court's ruling in *Lindsay* cannot be usefully applied to the instant case. The ruling in *Lindsay* reflects only a limited construction of the housing discrimination statute, and the decision itself predates the 1980 amendments which expressly incorporate the handicapped into the statute.

construing Title VII, 42 U.S.C. § 2000e— 2000e–17 (banning discrimination in employment), decisions that would require a showing of intentional discrimination.

Saville asserts that section 3604 of Title VIII is "virtually identical" to 6 *Del.C.* § 4603(1); therefore, he argues, the cases construing Title VIII should be relied upon in the instant case. Indeed, but for the Delaware statute's use of the word "creed" instead of "religion," and the addition of protected classes to include age, marital status, and handicap, 6 *Del.C.* § 4603(1) closely resembles 42 U.S.C. § 3604(a). Although such similarity exists between section 4603 and Title VIII, federal case law indicates that there is considerable overlap between analysis under Title VII and analysis under other federal antidiscrimination statutes, including Title VIII. *See, e.g., Robinson v. 12 Lofts Realty, Inc.*, 2d Cir., 610 F.2d 1032, 1038, 1040 n. 13 (1979); *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 146–147 (3d Cir.1977). Additionally, a comprehensive body of decisional law has developed under Title VII involving analysis of the issue of whether particular evidence demonstrates an intent to discriminate. *See, e.g., Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). For these reasons, we decline to look only at one line of cases construing a particular federal antidiscrimination statute (whether it be Title VII or Title VIII cases) to the exclusion of cases construing other federal antidiscrimination statutes. The applicability of the existing federal antidiscrimination decisions must be determined on a case-by-case basis.

### III

Apart from defining the "universe" of federal discrimination cases that may be relevant to determining the elements of a *discrimination claim under* section 4603, the parties also differ over whether this is a case of disparate treatment or of disparate impact. The determination of the type of case involved in turn determines whether proof of "intentional discrimination" is required. In the instant case, Saville argues that the issue facing this Court is whether the evidence establishes a disparate impact on the handicapped generally. Quaker Hill argues that the issue is whether the evidence establishes disparate treatment as to Saville and him alone.

### A.

■ Disparate treatment and disparate impact are two of four types of discrimination which commentators have identified as confronting the handicapped. *See Prewitt v. United States Postal Service*, 662 F.2d 292, 305 n. 19 (5th Cir.1981). Disparate treatment occurs when a decision maker "simply treats some people less favorably than others because of [a protected trait]. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Int'l Bro. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396, 415 n. 15 (1977). Disparate impact occurs when a decision maker's practices are facially neutral in their treatment of different groups but in fact unjustifiably disadvantage one or more groups. *Id.* Proof of discriminatory motive is not required under the disparate impact theory. *Id.*[3]

Disparate impact claims derive from *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). *See* Baldus & Cole, *Statistical Proof of Discrimination*, § 1.231 at 47 (1980). Proof of such claims is "almost invariably quantitative," i.e., based on statistics. Baldus & Cole at 47. Moreover, proof of disparate impact requires proof of effect on a group, not merely on an individual. *Teamsters*, 431 U.S. at 335–36 n. 15, 97 S.Ct. at 1854–55 n. 15; *Wimbley v. Bolger*, W.D.Tenn., 642 F.Supp. 481, 483 (1986).

---

**3.** For a further discussion of the differences between disparate impact claims and disparate treatment claims, *See* Baldus & Cole, *Statistical Proof of Discrimination*, § 1.23 at 45 (1980).

## . B.

In this case, Saville, belatedly on appeal before this Court, makes a fairly well-developed statistic-based claim of disparate impact based on group disadvantagement. He claims that "the effect of Quaker Hill's 'disruptive/disharmonious' selection criteria was to totally exclude all applicants with a history of mental illness as a class." In support of his argument, Saville uses on appeal a statistical compilation of Quaker Hill's past acceptance and rejection performance.

The argument comes too late. The record before the Commission confirms that the case was pleaded, tried and decided under a disparate treatment theory. Only upon appeal to this Court, after two hearings before the Commission and two intermediate appeals before the Superior Court, does Saville assert a statistically-based claim of disparate impact.[4] Saville now contends that these statistics show the existence of group, rather than individual, discrimination in Quaker Hill's selection criteria for housing.

During his two hearings before the Commission, Saville claimed only individual discriminatory treatment. The evidence he presented to the Commission reflected the nature of that individual, nonquantitative claim. Additionally, neither of the Commission's decisions, both written, contain any discussion of a statistic-based claim or a claim of group impact. Though the Commission, in its decision after remand, ordered Quaker Hill to "establish procedures for proper review of applications from handicapped persons, particularly those who are handicapped by reason of mental illness, so that these persons will be afforded meaningful access to housing," the Commission made no finding based on statistics or group impact.

Moreover, in September 1986, Saville filed a motion to affirm the Commission's decision after remand, but this motion made no reference to a claim, nor sought a finding, based on statistics or group impact. A statistically unsupported claim of group impact first appears in Saville's brief contesting Quaker Hill's second appeal to the Superior Court. There, Saville argued that "Quaker Hill's standards ... have the effect of excluding people with a history of mental illness." However, that brief makes no reference to a finding of disparate impact by the Commission or to any statistics concerning Quaker Hill's past record. Pointedly, it does not contain the statistical compilation contained in Saville's briefing in this Court. Furthermore, much of the statistical evidence Saville seeks to use in this appeal was introduced by Quaker Hill, not by Saville, in an effort to refute, not support, a statistical or group impact claim.

■ Saville correctly contends that a party may, for cause, urge upon appeal a reason for sustaining a commission's judgment, but to be permitted, the record must support the argument. *Gottlieb v. Heyden Chemical Corp.*, Del.Supr., 92 A.2d 594, 595 (1952). Here, since the record does not contain a finding by the Commission of disparate impact, such a finding (a mixed question of fact and law) may not be made by us.

Moreover, since Saville chose to present his case to the Commission as a disparate treatment case, "it would ... [be] unfair to evaluate the evidence under the disparate impact theory after trial." *Rossini v. Ogilvy & Mather, Inc.*, 2d Cir., 798 F.2d 590, 605 (1986); *see also Johnson v. Allyn & Bacon, Inc.*, 1st Cir., 731 F.2d 64, 73, *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984); *Wimbley v. Bolger*, W.D.Tenn., 642 F.Supp. 481, 483 (1986); *Scott v. City of Houston*, S.D.Tex., 613 F.Supp. 34, 36–37 (1985).[5]

---

4. Although Saville asserted a claim of disparate impact during the second intermediate appeal to the Superior Court, this previous claim was not supported by the necessary statistical data generated from Quaker Hill's past housing application policy. *See Quaker Hill II*, 523 A.2d at 956.

5. Since we conclude that the evidence presented to the Commission may only be evaluated under a disparate treatment standard, we need not decide whether a claim of discrimination based on disparate impact would, if asserted and substantiated from the outset, sustain Saville's claim. *See Atonio v. Wards Cove Packing Co.*,

## C.

We do not hold that disparate impact claims are not cognizable under 6 *Del.C.* § 4603. A comparison of section 4603 with any of the above-noted federal antidiscrimination provisions reveals why. *Alexander v. Choate,* 469 U.S. at 297 n. 17, 105 S.Ct. at 719 n. 17 (Rehabilitation Act); *Griggs v. Duke Power Company,* 401 U.S. at 424, 91 S.Ct. at 849 (Title VII); *Arthur v. City of Toledo,* 6th Cir., 782 F.2d 565, 574–76 (1986) (Title VIII); *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights,* 7th Cir., 558 F.2d 1283, 1290 (1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978) (Title VIII).[6] Thus, claims of disparate impact against the handicapped may lie in appropriate cases under 6 *Del.C.* § 4603. *See Alexander v. Choate,* 469 U.S. at 295, 105 S.Ct. at 718 ("[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference of benign neglect"). The parties have presented no argument that a contrary intent underlies 6 *Del.C.* § 4603(1).

## IV

The remaining issue, whether Quaker Hill violated 6 *Del.C.* § 4603 by engaging in discriminatory treatment in rejecting Saville, is resolved by the foregoing rulings. Proof of discriminatory treatment requires proof of an intent to discriminate, which Saville has failed to establish. *Teamsters,* 431 U.S. at 335–36 n. 15, 97 S.Ct. at 1854–55 n. 15. We also do not reach the collateral issue of the Commission's alleged bias against Quaker Hill, an issue rendered moot by our prior rulings. Our review of the record and applicable

decisional law satisfies us that no substantial evidence before the Commission would support a finding of an intent to discriminate. *See* 29 *Del.C.* § 10142(d). Accordingly, the judgment of the Superior Court is

AFFIRMED.

9th Cir., 768 F.2d 1120, 1133 n. 8 (1985); *see also Hanson v. Veterans Admin.,* 5th Cir., 800 F.2d 1381, 1388–90 (1986) (disparate impact theory applied to appraisal practices under Title VIII); *Keith v. Volpe,* C.D.Cal., 618 F.Supp. 1132, 1147–57 (1985) (disparate impact theory applied, under Title VIII, to denial of lot subdivision, zone change, and site development applications); Baldus & Cole § 1.12 at 46 (1980).

**6.** A fourth federal antidiscrimination statute, Title VI, prohibits discrimination under programs

or activities receiving federal financial assistance. 42 U.S.C. § 2000d. Five Justices of the Supreme Court have concluded that Title VI proscribes only intentional discrimination. *Guardians Ass'n v. Civil Serv. Comm'n of New York,* 463 U.S. 582, 610, 103 S.Ct. 3221, 3237, 77 L.Ed.2d 866 (1983) (Powell, J., Burger, C.J., Rehnquist, J., concurring); *id.* at 615, 103 S.Ct. at 3239 (O'Connor, J., concurring); *id.* at 645, 103 S.Ct. at 3255 (Stevens, J., dissenting).