IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KEVIN IMHOF,                                )
                                            )
            Appellant,                      )
                                            )
    v.                                      )     C.A. No. K21A-06-004 NEP
                                            )
DELAWARE BOARD OF MEDICAL                   )
LICENSURE AND DISCIPLINE,                   )
                                            )
            Appellee.                       )

Submitted: October 26, 2021
Decided: January 26, 2022
Corrected: January 27, 2022

## MEMORANDUM OPINION AND ORDER

*Upon Appellant's Appeal from the Decision of the Delaware Board of Medical Licensure and Discipline*

**AFFIRMED IN PART** and **REMANDED**

Bruce A. Rogers, Esquire, Bruce A. Rogers, P.A., Georgetown, Delaware, *Attorney for Appellant.*

Kemba Lydia-Moore, Esquire, and Patricia A. Davis, Esquire, Deputy Attorneys General, Department of Justice, Dover, Delaware, *Attorneys for Appellee.*

**Primos, J.**

Before this Court is the appeal of Kevin A. Imhof (hereinafter "Imhof") from the decision of the Board of Medical Licensure and Discipline (hereinafter the "Board") finding that he engaged in unprofessional conduct. A final order of the Board (hereinafter the "Order") found that Imhof, a Board-licensed paramedic, engaged in conduct constituting crimes substantially related to the practice of medicine in violation of 24 *Del. C.* § 1731(b)(2); engaged in dishonorable, unethical, or other conduct likely to deceive, defraud, or harm the public in violation of 24 *Del. C.* § 1731(b)(3); and wilfully failed to report certain conduct in a timely fashion in violation of 24 *Del. C.* § 1731(b)(14).[1] For the reasons that follow, the Court finds that, while violations of the first two provisions cited *supra* are supported by substantial evidence, it is unclear from the facts in the record whether a violation of the third provision is supported by substantial evidence. Therefore, the Order is **AFFIRMED IN PART and REMANDED**.

## I. FACTUAL AND PROCEDURAL HISTORY

In 2019, Imhof completed a questionnaire and underwent a pre-employment polygraph test as part of his application for a position with the Delaware State Police. On the questionnaire and during the test, Imhof made certain admissions, including the following: 1) he had accessed his former wife's social media accounts, emails, and text messages without her permission during the second half of 2018;[2] 2) he had driven to his former wife's residence and had

---

[1] 24 *Del. C.* § 1731(b) ("'Unprofessional conduct' includes any of the following acts or omissions: . . . (2) Conduct that would constitute a crime substantially related to the practice of medicine; (3) Any dishonorable, unethical, or other conduct likely to deceive, defraud, or harm the public; . . . (14) Wilful failure to report to the Board as required by § 1730(b) of this title . . . .").

[2] Imhof and his former spouse divorced in November 2018, but most of the conduct to which he admitted during the polygraph test occurred while they were still married but separated. Hearing Officer's Recommendation at 12, 19.

watched through an outside window while she and another individual engaged in sexual activity; 3) he had trespassed into his former wife's house and committed lewd acts within; and 4) he had committed acts of vandalism by keying his former wife's automobile, and then his own—to conceal his actions—and, thereafter, had filed a fraudulent insurance claim related to such damages. In consequence, the Delaware State Police made a criminal referral.

In September 2019, Imhof entered guilty pleas to the offenses of Criminal Mischief, Violation of Privacy, and Trespass with Intent to Peer or Peep. The remaining charges were dropped. Imhof did not inform the Board of the criminal charges or his convictions until he applied to renew his license in May 2020.

The Delaware Department of Justice filed a disciplinary complaint against Imhof with the Board in January 2020, which was twice amended. A hearing was held on the complaint before a hearing officer on February 8, 2021. The hearing officer, after reviewing all the submitted and testimonial evidence, issued a written recommendation to the Board on March 24, 2021, including findings of fact, recommended conclusions of law, and recommended discipline. The hearing officer concluded that Imhof had violated the three statutory provisions listed *supra.* Specifically, the hearing officer found that by pleading guilty to two crimes the Board has determined to be "substantially related to medicine," Imhof had violated 24 *Del. C.* § 1731(b)(2); that Imhof had engaged in "dishonorable, unethical, or other conduct likely to deceive, defraud, or harm the public" in violation of 24 *Del. C.* § 1731(b)(3); and that Imhof's report of his criminal conduct "was grossly untimely" in that he had waited nine months following his arrest to report the matter to the Board, thus violating 24 *Del. C.* § 1731(b)(14).[3]

---

[3] *Id.* at 27.

The hearing officer's recommended discipline included suspension of Imhof's Paramedic license.[4]

Following issuance of the hearing officer's recommendation, the parties were allowed twenty days to submit to the Board written argument, objections or exceptions to the hearing officer's recommendation. Imhof submitted written exceptions to the Board.[5]

The Board considered Imhof's oral and written arguments, along with the State's oral arguments in opposition, and in the Order adopted the facts found by the hearing officer but squarely rejected a specific legal conclusion:

> [T]he hearing officer's discussion of Board Rule 8.1.3 is expressly rejected as inapplicable as Mr. Imhof's wife was not his patient and

---

[4] The recommended discipline, in relevant part, was as follows:

1. That the Board of Medical Licensure and Discipline suspend the Paramedic license presently held by Kevin Imhof for a period of two years . . . ;
2. That Mr. Imhof be permitted to petition the Board to lift such suspension not sooner than one year after such period of license suspension begins, but if and only if Mr. Imhof enrolls in the Delaware Professionals Health Monitoring Program (DPHMP) within 30 days of the date of the Board's final order . . . ;
3. That if Mr. Imhof fails to timely enroll in DPHMP . . . his license be or remain on suspension until the full two years [sic] period of license suspension expires;
4. That if and when Mr. Imhof petitions the Board to lift his suspension and return to practice, he shall appear before the Board and show proof the [sic] he is fit to return to practice . . . ;
5. That Mr. Imhof be ordered to pay a monetary fine in the amount of $1,000 within 90 days of the date of the final order . . . ;
6. That Mr. Imhof be ordered to report to the Board any new criminal investigations, arrests and/or convictions . . . ;
7. That the final order of the Board in this case constitute public disciplinary action reportable to pertinent public practitioner data bases.

*Id*. at 29–30.

[5] The State did not submit written exceptions to the Board but instead presented oral argument in opposition to Imhof's exceptions at the Board hearing held on May 4, 2021.

4

the hearing officer's discussion of the "tenor" of that regulation is rejected by the Board.[6]

In addition, the Board was persuaded by Imhof that the DPHMP requirement was not an appropriate discipline (as Imhof had already completed all aspects of probation and requirements arising from his participation in Veterans Court), and to that degree the Board modified the discipline to Imhof's benefit and discarded the requirement for Imhof to participate in the DPHMP.[7]  The Order noted that "[t]he Board is bound by the findings of fact made by the hearing officer," but "may affirm or modify the hearing officer's conclusions of law and recommended discipline."[8]  In summary, the Board adopted the hearing officer's factual findings and affirmed the majority of the legal conclusions but lessened the discipline imposed.

## II. PARTIES' CONTENTIONS

Imhof raises three primary grounds for appeal: 1) the findings of the hearing officer contained both legal errors and typographical errors[9] that are "part of the

---

[6] Bd. Ord. at 2.

[7] *Id.* at 3–4.  The discipline imposed by the Board, in relevant part, was as follows:

> 1. Mr. Kevin Imhof's License is suspended for a period of two years, effective on the date of this Order; and
> 2. Mr. Imhof is permitted to petition the Board to lift such suspension not sooner than one year after such period of license suspension begins, but the suspension will only lift if Mr. Imhof can demonstrate to the satisfaction of the Board that he is fit to return to the practice, has rehabilitated, and has not engaged in any additional behavior of the type giving rise to this order; and
> 3. Mr. Imhof is ordered to pay a monetary fine in the amount of $1000 within 90 days of the date of this Order. . . .

*Id.* at 4.

[8] *Id.* at 1.

[9] Typographical errors, especially those referenced by Imhof on page 9 of his opening brief, *e.g.*, the hearing officer's substituting another name for Imhof's in a portion of the

5

parcel of findings" subject to collateral dispute on appeal;[10] 2) the crimes of Imhof are not "substantially related to the practice of medicine," and the Board did not take into account the facts and circumstances of this matter but instead imposed "strict liability" upon Imhof under the designated criminal charges listed in 24 *Del. Admin. C*. § 1700–15 in a manner not supported by the record;[11] and 3) Imhof's actions did not "harm the public" in that they involved only his former wife.[12]

recommendation, do not give rise to an appealable issue and are *de minimis*. *See MRPC Fin. Mgmt. LLC v. Carter*, 2003 WL 21517977, at *6 (Del. Super. June 20, 2003) ("Petitioner complains that because the Board references the incorrect Referee, it must have considered facts outside the ruling of Theresa Matthews. Clearly, the typographical error or substitution of one name for another is of no consequence. It is the record and decision below which matter; and the decision accurately reflects the record below. The error is *de minimus* [sic].").

[10] Imhof's Opening Br. at 6–17; Imhof's Reply Br. at 2–3.

[11] Imhof's Opening Br. at 6 (arguing that the Board appears to "check the box" of listed crimes without addressing the specific facts of the case). In making this argument, Imhof contends that it is inappropriate for the Board to have found that private conduct between spouses unrelated to the actual practice of medicine should give rise to disciplinary action. Imhof's Reply Br. at 3.

[12] Imhof's Opening Br. at 9–11. As an additional argument, Imhof contends that his motion to dismiss (filed before the hearing) should have been granted because the delay of the hearing was a violation of his due process rights. Delaware courts have found that "[a]s a general rule, an individual's due process rights are not violated, and will not effect [sic] the validity of an administrative determination, unless actual prejudice is shown." *Sandefur v. Unemployment Ins. Appeals Bd.*, 1993 WL 389217, at *5 (Del. Super. Aug. 27, 1993) (citing 73A C.J.S. *Public Administrative Law and Procedure* § 137)). Moreover, in reference to delays in professional licensure proceedings, "Delaware's interest in not applying the doctrine of laches or a general statute of limitations to such proceedings is substantial." *See Kotler v. Bd. of Med. Prac.*, 630 A.2d 1102, 1993 WL 307621, at *3 (Del. 1993) (TABLE). Thus, a party asserting due process violations or laches in such a context must show that the delay was unreasonable and has caused actual prejudice. *Id.* at *2, *3.

     The hearing officer found that any delay was not unreasonable given the Covid-19 pandemic (and orders that followed, *e.g.*, Chief Justice's Administrative Order tolling time requirements under the Speedy Trial Guidelines during the judicial emergency, Admin. Order No. 12 ¶ 4 (Nov. 2, 2020)) and issues related to technology. In addition, the hearing officer found that Imhof had not shown actual prejudice by such delay. Ex. H.O. X1 at 2. This Court finds that the hearing officer's November 10, 2020, decision denying Imhof's Motion to Dismiss is based on substantial evidence and free from legal error.

The State opposes the appeal, stating that the hearing officer's decision is adopted only as to its factual findings and that the Board made a final rendering as to the legal recommendations, *i.e.*, choosing whether or not to accept or modify the hearing officer's conclusions of law and recommended discipline.[13] Thus, the State contends that when the Board rejects a recommendation based on a legal error, this Court, on appeal, should disregard that error as it was not applied in the "case decision."[14] As to Imhof's second argument, the State contends that it is undisputed that Imhof pled guilty to two offenses that the Board has listed as "substantially related to the practice of medicine." Therefore, no further inquiry is required due to the guilty pleas. Lastly, the State contends that Imhof's former wife is part of the "public" and in addition that other members of the public were harmed, including the insurance carrier that was defrauded.

### III. STANDARD OF REVIEW

On appeal from an administrative board's final order, this Court must determine whether the board's findings are supported by substantial evidence and are "free from legal error."[15] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]

The Court does not weigh the evidence or make its own factual findings—rather, it determines if the evidence was adequate to support the administrative board's factual findings.[17] Upon review of the factual determinations of an administrative board, the Court shall "take due account of the experience and

---

[13] State's Answering Br. at 12–13.

[14] *Id.* at 14–15.

[15] *Optima Cleaning Sys. v. Unemployment Ins. Appeal Bd.*, 2010 WL 5307981, at *2 (Del. Super. Dec. 7, 2010).

[16] *Id.* (citing *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993) (internal quotations omitted)).

[17] *Id.* at *2 (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

specialized competence of the agency and of the purposes of the basic law under which the agency has acted."[18] Questions of law are reviewed *de novo*.[19] Hence, if the administrative board's decision is free from legal error and supported by substantial evidence, it must be affirmed.[20]

## IV. DISCUSSION

29 *Del. C.* § 10142(a) provides that any party against whom a "case decision" has been decided may appeal that decision to this Court.[21] The provisions of the Delaware Administrative Procedures Act, including those regarding judicial review, apply to the Board.[22] A "case decision" means the final order issued by the Board, not the legal recommendations of the hearing officer.[23] A hearing officer's recommendation to the Board is "nothing more than [a] recommendation of action."[24] It lacks both the authentication and formalities required of a final order.[25] Although neither the Board nor this Court is bound by the hearing officer's proposed conclusions of law or recommended discipline, both the Board and this Court are generally bound by the findings of facts set out

---

[18] 29 *Del. C.* § 10142(d).

[19] *Person-Gaines v. Pepco Holdings,* 981 A.2d 1159, 1161 (Del. 2009).

[20] *Motiva Enter. v. Sec'y of Dept. of Nat. Res. & Envtl. Control*, 745 A.2d 234, 242 (Del. Super. 1999).

[21] *See* 29 *Del. C.* § 10102(4) ("Court" is the Superior Court).

[22] *Gala v. Delaware Bd. of Med. Licensure and Discipline*, 2020 WL 2111372, at *5 (Del. Super. May 1, 2020), *aff'd sub nom. Gala v. Bullock* (hereinafter "*Bullock*"), 250 A.3d 52 (Del. 2021).

[23] *See Daimler Chrysler Corp. v. Del. Dept. of Ins.*, 2007 WL 914909, at *2 (Del. Super. Jan. 23, 2007) (holding that because a hearing officer only makes recommendations to the Insurance Commissioner, it is the Commissioner's decision, after consideration of those recommendations, that is the final determination subject to judicial review under the APA, and dismissing the appellant's appeal of the hearing officer's recommendations in that case as impermissibly interlocutory).

[24] *Gala*, 2020 WL 2111372, at *5 (quoting *Quaker Hill Place v. Saville*, 523 A.2d 947, 952–53 (Del. Super. Feb. 10, 1987), *aff'd*, 531 A.2d 201 (Del. 1987)).

[25] *Id.* (citing *Quaker*, 523 A.2d at 953).

8

by the hearing officer.[26] However, to the extent that the findings of facts implicate legal issues, *e.g.*, evidentiary rulings, those are ripe for appeal.[27]

## A. Hearing Officer's Recommendation

### 1. Imhof's evidentiary objections and argument regarding the scope of the Board's inquiry are rejected.

Administrative agencies "operate less formally than courts of law."[28] Accordingly, "rules of evidence do not strictly apply to administrative hearings."[29] The Board may hear "all evidence which could conceivably throw light on the controversy."[30] "Only when the hearsay is incompetent will the Board's reliance on such testimony be deemed an abuse of discretion."[31] However, the Board should apply the rules of evidence "insofar as practicable."[32]

Imhof argues that the hearing officer committed legal error when the officer allowed the polygraph operator to testify regarding evidence related to Imhof's character beyond the scope of his criminally charged conduct. In addition, Imhof

---

[26] *Spraga v. Delaware Bd. of Med. Licensure and Discipline*, 2017 WL 3396490, at *3 (Del. Super. Aug. 7, 2017) ("Unlike the Hearing Examiner's findings of fact, which the Board (and the Court) are bound to follow, the Examiner also made proposed conclusions of law to which neither are similarly bound."); *accord Bullock*, 250 A.3d at 66 ("The Board is bound by a hearing officer's findings of fact, but it has the discretion to consider a party's exceptions as to conclusions of law and recommended penalties.").

[27] *See, e.g.*, *Tenaglia-Evans v. St. Francis Hosp.*, 913 A.2d 570, 2006 WL 3590385, at *3 (Del. 2006) (TABLE) (considering evidentiary rulings by an administrative board under an abuse of discretion standard).

[28] *Leonard v. Delaware Bd. of Nursing*, 2013 WL 422904, at *4 (Del. Super. Jan. 30, 2013) (quoting *Standard Distrib. Co. Through Pennsylvania Mfrs. Ass'n Ins. Co. v. Nally*, 630 A.2d 640, 647 (Del. 1993)).

[29] *Tenaglia-Evans*, 2006 WL 3590385, at *3.

[30] *Id.* (quoting *Ridings v. Unemployment Ins. Appeal Bd.*, 407 A.2d 238, 240 (Del.1979)).

[31] *Id.* (citing *Dixon v. Lower Kensington Envtl. Ctr.*, 1994 WL 380999 (Del. Super. Jul. 8, 1994)).

[32] *Standard Distrib., Inc. v. Hall*, 897 A.2d 155, 157 (Del. 2006).

argues that the Board relied on factual findings not directly related to his pled crimes.

As to the latter, the Board is not restricted to evidence related only to charged or convicted crimes, and in many cases the Board investigates uncharged conduct.[33] In this matter, the Board, through the hearing officer, heard evidence that shed light on the pertinent actions of Imhof relating to the violations alleged in the disciplinary complaint.

As to the evidentiary issue, Imhof's conduct reported to the polygraph operator, at times, overstretched the bounds of relevance to the proceeding, *e.g.*, the statements regarding the *kik* application.[34]   However, neither the hearing officer's "Findings of Fact" nor the Order relied on these statements.  Therefore, to the extent that this evidence was improperly admitted, the admission constituted harmless error.[35]

## 2. Imhof's argument regarding the hearing officer's legal recommendation is not within the "case decision" and was squarely rejected by the Board.

Imhof devotes significant argument to the hearing officer's legal finding that Imhof's spouse could be considered a "patient" under the "tenor" of the regulation.[36]   The Board, as mentioned *supra*, squarely rejected this legal

---

[33] *See, e.g.*, *Bilski v. Bd. of Med. Licensure and Discipline*, 2014 WL 3032703, at *1 (Del. Super. June 30, 2014), *aff'd*, 115 A.3d 1214 (Del. 2015) (investigating medical record keeping practices of a doctor).

[34] Hearing Officer's Recommendation at 10.

[35] *See Conley v. Capitol Homes, Inc.*, 2006 WL 2997535, at *7 (Del. Super. Aug. 31, 2006) (finding that when the "[Industrial Accident] Board's opinion does not indicate it considered this collateral evidence in rendering its decision," such admitted evidence constitutes "harmless error, if error at all.").

[36] *See* Opening Br. at 9; Reply Br. at 2–3.

recommendation, and therefore this issue is not part of the "case decision," *i.e.*, it is not reviewable by this Court.[37]

## B. The Board's "Case Decision"

### 1. 24 *Del. C.* § 1731(b)(2)—Conduct that would constitute a crime substantially related to the practice of medicine

Pursuant to 24 Del. C. § 1731(b)(2), "Unprofessional Conduct. . . [is] [c]onduct that would constitute a crime substantially related to the practice of medicine." Crimes substantially related to the practice of medicine are enumerated in 24 *Del. Admin. C.* § 1700–15 (hereinafter "Regulation 15"). Regulation 15 states that "for purposes of licensing, renewal, reinstatement and discipline, the conviction of any of the following crimes . . . or substantially similar crimes in another state or jurisdiction, is deemed to be substantially related to the practice of Medicine . . . in the State of Delaware without regard to the place of conviction. . . ."[38] The Board has the power and duty to designate crimes that it deems substantially related to the practice of medicine.[39] In addition, this Court has previously found that the Board followed the proper procedures under the Delaware APA in enacting Regulation 15.[40]

---

[37] *See Bullock*, 250 A.3d 52, 67 (rejecting review of claims that are based upon findings "appropriately disregarded" by the Board); *accord Bilski*, 2014 WL 3032703, at *7 (stating "the court does not consider arguments" that the Board squarely rejected and bases its decision "solely on the Board's final decision").

[38] 24 *Del. Admin. C.* § 1700–15.

[39] 24 *Del. C.* § 1713(e) ( "The Board shall promulgate regulations specifically identifying those crimes which are substantially related to the practice of medicine . . . ."

[40] *Schaller v. Bd. of Med. Licensure and Discipline*, 2015 WL 3654963, at *2, *6, *7 (Del. Super. June 8, 2015) ("The Board found that Regulation 15 was enacted properly and that there had been no violation of the Delaware Administrative Procedures Act. . . . This Court finds that Regulation 15 was properly enacted . . . . [and] agrees with the Board and finds that no error of law occurred when Regulation 15 was adopted without public hearing.").

Imhof's primary argument regarding the "case decision" is that his conduct was not substantially related to the practice of medicine.  However, two of Imhof's pled offenses, Violation of Privacy and Trespassing with Intent to Peer or Peep, are listed among the crimes substantially related to the practice of medicine found in Regulation 15.[41]  Thus, there is no dispute that Imhof pled guilty to two of the listed crimes. As to this point, Imhof argues that "the evidence submitted by the State" was "in essence, a claim of strict liability."  It is unclear what argument Imhof is attempting to make in this regard.  In the civil context, "strict liability" refers to liability without reference to fault; in the criminal context, it refers to liability without reference to the accused person's intent (or lack thereof).  Here, however, there is no dispute that Imhof intended to commit the crimes in question and bears responsibility for them—indeed, he entered guilty pleas to both crimes.

The Board, under its powers and duties, "shall" and did designate certain crimes to be substantially related to the practice of medicine and went through the proper administrative procedures to do so by enacting Regulation 15.  There was substantial evidence both through Imhof's own admissions in his questionnaire and polygraph, and by means of his guilty pleas, to find that the crimes were committed.[42]  Hence, by the authority of Regulation 15, the crimes are deemed "substantially related to the practice of medicine."  Imhof neither cites authority nor explains why the Board must, independently of Regulation 15, state why such

---

[41] 24 *Del. Admin. C.* § 1700–15 ("The Board finds that for purposes of licensing, renewal, reinstatement and discipline, the conviction of any of the following crimes . . . is deemed to be substantially related to the practice of Medicine . . . . 15.3.4 §820. Trespassing with intent to peer or peep into a window or door of another . . . . 15.6.10 §1335. Violation of privacy . . . .").

[42] *See, e.g.*, *Schaller*, 2015 WL 3654963, at *2 (stating that a conviction on the stated charge amounts to "sufficient substantial evidence to find that Dr. Schaller engaged in conduct that constitutes a crime substantially related to the practice of medicine in Delaware." (internal quotations omitted)).

crimes are "substantially related" to his profession. This Court finds no case law or statutes to support that proposition.

## 2. 24 *Del. C.* § 1731(b)(3)—Any dishonorable, unethical, or other conduct likely to deceive, defraud, or harm the public

The Board has promulgated a list of "dishonorable or unethical" conduct under 24 *Del. Admin. C.* § 1700–8 (hereinafter "Regulation 8"). According to Regulation 8, "[t]he phrase 'dishonorable or unethical conduct likely to deceive, defraud, or harm the public' as used in 24 *Del.C.* § 1731(b)(3) shall include, but not be limited to . . . [a]ny . . . act tending to bring discredit upon the profession."[43]

Imhof's assertion that the Board's conclusions were "summary [in] nature"[44] are not supported by the Order, which found that Imhof committed acts, to which he admitted, that included 1) intentionally damaging his spouse's vehicle, (2) committing insurance fraud in connection with contemporaneous damage to his own vehicle, 3) accessing his spouse's home without permission and destroying clothing and bedding within; and 4) peering through the window of his spouse's home to watch her and another individual  engage in sexual activity.[45]  It is not difficult to perceive how these actions would bring discredit to the profession.[46]

Imhof argues that because his actions involved "private conduct between spouses," it was not likely to "deceive, defraud, or harm the public."  Imhof's actions, however, affected not just his spouse, but others as well: *e.g.*, during both the "keying" incident and the incident involving surreptitious entry into his

---

[43] 24 *Del. Admin. C.* § 1700–8 at 8.1, 8.1.16.

[44] Imhof's Opening Br. at 17.

[45] Bd. Ord. at 2.

[46] *See id.* at 3 ("The Board finds that as a paramedic, Imhof has been placed in a position of trust and through his behavior as found herein, he was proven to be untrustworthy on multiple levels. These were not minor offenses; these are serious breaches of trust.").

spouse's home, he left his children unattended in his vehicle,[47] and his actions also led to the defrauding of his insurance carrier. Because the word "public" is not separately defined under the statute,[48] it must be given its ordinary meaning,[49] and certainly a reasonable, and ordinary, definition of the term would render it applicable to all those individuals and entities not under the professional oversight of the Board—which would include both members of Imhof's family and his insurance carrier. Hence, there is substantial evidence to support the finding by the Board that Imhof violated 24 *Del.C.* § 1731(b)(3) by committing acts likely to "harm the public" and "discredit" the profession.

### 3. 24 *Del. C.* § 1731(b)(14)—Wilful failure to report to the Board as required by § 1730(b) of this title

The Medical Practice Act requires a licensee to report certain conduct to the Board within 30 days.[50] Imhof argues that the information regarding the "transfer" of information between certain data systems demonstrates that it could not be determined whether he failed to report.[51] However, the hearing officer noted that Imhof, through his counsel, conceded that his reporting was late.[52] This was illustrated by counsel's representations that the lack of reporting came

---

[47] Hearing Officer's Recommendation at 20. Imhof was ultimately charged with two counts of endangering the welfare of a child, although he did not enter guilty pleas to those charges. *See* exhibits to Imhof's letter submission to the Board dated April 1, 2021.

[48] *See* 24 *Del. C.* § 1702 ("public" not included in defined terms applicable to statute).

[49] *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1245 (Del. 1985) ("Words used in a statute that are undefined should be given their ordinary, common meaning." (citing *Diamond v. Chakrabarty,* 447 U.S. 303, 308 (1980))).

[50] 24 *Del. C.* §§ 1731(b)(14), 1730(b).

[51] "The Chief Investigator for the Board admitted the transfer of information from the former information management system (DELPROS) to L2K was ongoing. . . This supports the proposition that it could not be determined if a report had been made of the offenses." Imhof's Opening Br. at 10.

[52] Hearing Officer's Recommendation at 27 ("In his closing argument counsel for Mr. Imhof admitted that Mr. Imhof's reporting was late.").

because of "bad advice" given to Imhof during his criminal proceedings.[53]  Imhof himself testified that he had failed  to disclose his criminal charges until his reapplication in May 2020.[54]  Imhof cannot shield any duty to report, and any wilful failure not to do so, behind either the reporting systems or "bad advice."

However, in order for a violation to occur, there must be a duty to report under § 1730(b).  The hearing officer appeared to rely on two statutory provisions[55] concerning this duty to report: § 1730(b)(1)(c)[56] and § 1730(d).[57] The State appears to argue that Imhof's duty to report arose under § 1730(b)(2), which requires a licensee to report "any civil or criminal investigation . . . which concerns that person's certification or license or other authorization to practice medicine."  However, the hearing officer did not rely upon this provision in finding a violation under § 1731(b)(14), and the Board merely accepted the hearing officer's recommendation as to this point without further comment.[58]

---

[53] Imhof's  counsel stated in the hearing before the Board that "for the information about no reporting was he had bad advice from his attorney who was representing him in the criminal matter [sic] . . . ." Transcript of Proceedings (May 4, 2021) at 5.

[54] Tr. of Feb. 8, 2021 Adm. Hrn'g before Chief Hearing Officer (Imhof's Testimony) at 250-51.

[55] *See* Hearing Officer's Recommendation at 25 (finding that "Sections 1730(b)(1) and 1730(d) are [the] pertinent" subsections that gave rise to Imhof's reporting requirements in this matter).

[56] 24 *Del. C.* § 1730(b)(1) ("Every person to whom a certificate to practice medicine is issued . . . has a duty to report to the Board within 30 days: . . . (c) Any reasonably substantiated incidents involving violence, threat of violence, abuse, or neglect by a person toward any other person.").  At one point, the hearing officer refers to "24 *Del. C.* Sec. 1730(b)(1)(b)," but this appears to be a mis-citation, as that subsection refers to disciplinary action taken by a medical society against the licensee, while the hearing officer is clearly referencing a subsection referring to acts of abuse toward another person—*i.e.*, § 1730(b)(1)(c).  Hearing Officer's Recommendation at 27.

[57] *Id.* § 1730(d) ("Every person to whom a certificate to practice medicine is issued has a duty to report, within 30 days of the day each such person becomes aware, of the existence of a report to the Department of Services for Children, Youth and Their Families under Chapter 9 of Title 16 against that person concerning child abuse or neglect or a report to the Division of Health Care Quality under Chapter 85 of Title 11 against that person concerning adult abuse, neglect, mistreatment, or financial exploitation.").

[58] Bd. Ord. at 2.

The hearing officer's reliance upon § 1730(d) is problematic for two reasons. First, § 1731(b)(14) references a failure to report under § 1730(b), not under § 1730(d). Second, substantial evidence does not support a finding that there was a failure to report under § 1730(d). A § 1730(d) violation would require that Imhof was "aware" of the "existence of a report to the Department of Services for Children, Youth, and Their Families" related to his actions. The hearing officer, although mentioning that the subsection was "pertinent," did not point to the existence of a report to any agency. Without the report, or mention of it, in the record, it would be impossible to ascertain whether Imhof was "aware" of such a report. Thus, even though the record supports the fact that there were multiple charges of endangerment of child welfare alleged,[59] Imhof's awareness of the conduct related to his children does not equate to awareness of a "report" to a different agency.

The hearing officer's reliance upon § 1730(b)(1)(c) is also problematic, but for different reasons. That subsection required that Imhof report "[a]ny reasonably substantiated incidents involving violence, threat of violence, abuse, or neglect by a person toward any other person."[60] The hearing officer concluded that Imhof's conduct "constituted 'abuse' of his former spouse."[61] Imhof's actions, including accessing his then-spouse's social media accounts without her permission, spying on her, secretly entering her home and ejaculating on her bed, and damaging her automobile, are certainly reprehensible for the reasons explained *supra.* However, reasonable minds could differ as to whether they constitute "abuse," particularly given that none of them involved direct contact between Imhof and his spouse. 24 *Del. C.* § 1731(b)(14), however, requires

---

[59] *See supra* note 47.
[60] 24 *Del. C.* § 1730(b)(1)(c).
[61] Hearing Officer's Recommendation at 27.

16

wilfulness, and while the hearing officer specifically found that Imhof's failure to report was wilful, the hearing officer failed to discuss the required element of wilfulness in the context of the meaning of the term "abuse," which is not defined under the statute. The Court is concerned that, if Imhof did not consider his treatment of his spouse to constitute "abuse"—and, again, reasonable minds could differ on this point—he might legitimately have been unaware of his duty to report under this provision. The problem is compounded by the fact that, as noted *supra*, the Board accepted this recommended legal conclusion of the hearing officer without any significant explanation or discussion.[62]

Given the hearing officer's failure to address the definitional issue noted above in the context of wilfulness—and the Board's cursory acceptance of the hearing officer's recommendation—meaningful review on this issue by this Court has been precluded. Therefore, without reversing the Board on this point, the Court will remand the matter to the Board for further consideration of whether a wilful failure to report has been established pursuant to 24 *Del. C.* § 1731(b)(14),[63] and to consider whether the discipline imposed should be modified in light of any additional consideration of these matters by the Board.[64]

## V. CONCLUSION

For the foregoing reasons, the Court affirms the Board's finding that Imhof engaged in conduct constituting crimes substantially related to the practice of

---

[62] Bd. Ord. at 2.

[63] The Court will leave it to the Board to determine whether additional findings of fact may be needed on this issue.

[64] In this regard, it is apparent from the hearing officer's recommendation that, under the Board's disciplinary guidelines, the potential discipline for the failure to report charge is the least serious of the three potential violations: for the §1731(b)(2) and § 1731(b)(3) violations, suspension is a potential disciplinary action, while only a fine and probation are potential disciplinary actions for a § 1731(b)(14) violation. Hearing Officer's Recommendation at 28.

medicine in violation of 24 *Del. C.* § 1731(b)(2) and that he engaged in dishonorable, unethical, or other conduct likely to deceive, defraud, or harm the public in violation of 24 *Del. C.* § 1731(b)(3). However, further inquiry by the Board is needed regarding whether Imhof wilfully failed to report certain conduct in violation of 24 *Del. C.* § 1731(b)(14), and whether, as a result of that inquiry, the discipline imposed should be modified. Therefore, the Board's decision is **AFFIRMED IN PART**, but the matter is **REMANDED** for further proceedings consistent with this opinion as follows:

1. With regard to the third alleged violation, the Board will consider whether there was a wilful failure to report in violation of 24 *Del. C.* § 1731(b)(14) in light of the fact that "abuse" is not defined in the statute. In this regard, the Board should consider whether that term could be open to interpretation, *e.g.*, regarding whether it requires physical contact between the perpetrator and the victim, and whether and how any issues of interpretation could impact the required statutory element of wilfulness. The Board will also determine whether any such inquiry would require any further evidentiary hearings or supplemental findings of fact.

2. The Board should also consider whether the discipline previously imposed should be modified as a result of this inquiry and any further decisions by the Board following from it.

3. The Board will record any findings and conclusions regarding this matter in writing to facilitate further review by this Court.

18

4. The Board will submit a supplemental order to this Court consistent with the above directives within 90 days of the date of this Order.[65]

Pursuant to the above, jurisdiction is retained by this Court.

**IT IS SO ORDERED.**

_____
Judge

NEP/wjs
*Via File & ServeXpress*
oc: Prothonotary
cc: Counsel of Record
    Delaware Board of Medical Licensure and Discipline (*via* U.S. mail)

---

[65] Should additional time be needed by the Board for an adequate consideration of this matter on remand, an appropriate request may be submitted to this Court.